MOHL v. LAMAR CANAL CO. et al.

(Circuit Court, D. Colorado. March 14, 1904.)

No. 4,448.

1. WATERS—APPROPRIATION FOR IRRIGATION—NATURE OF RIGHT.
    One who diverts water from a flowing stream for a beneficial purpose may have the use of it so long as he conforms to the law regulating such matters, but he has no contract with or grant from the government, federal or state, in respect to his privilege.

2. SAME—FEDERAL STATUTE.
    Rev. St. U. S. § 2339 [U. S. Comp. St. 1901, p. 1437], providing that whenever, by priority of possession, rights to the use of water for mining, agricultural, or other purposes have accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same, does not create rights, but is a recognition by Congress of a pre-existing right of possession, constituting a valid claim to its continuance.

3. SAME—JURISDICTION OF FEDERAL COURTS—IMPAIRMENT OF CONTRACT.
    Two canal companies in Colorado constructed irrigation ditches appropriating water from the Arkansas river. The second to commence the work first recorded its plat, in compliance with Act Colo. Feb. 11, 1881, which, under said act, gave it priority of right; but in subsequent litigation between the parties the Supreme Court of the state held such act and the amendment thereto of April 20, 1887, unconstitutional and void, because not legally enacted. *Held*, that the compliance with said act by the second company, while it was recognized as the law of the state, did not give such company any contract rights with the state, or under the laws of the United States, which entitled it or the owner of a water right thereunder to invoke the jurisdiction of a federal court on the ground that it had a vested contract right to priority in the use of the water of the river, which was impaired by the state decision; nor do such facts authorize the federal court to review or reverse such decision, which, as a construction of the Constitution of the state, is conclusive.

---

¶ 3. Jurisdiction of federal courts in cases involving federal question, see notes to Bailey v. Mosher, 11 C. C. A. 308; Montana Ore-Purchasing Co. v. Boston & M. C. C. & S. Min. Co., 35 C. C. A. 7.

In Equity.   On demurrer to bill.

Rogers, Shafroth & Gregg, for complainant.

Clarence F. Mead, for respondents.

HALLETT, District Judge.   The bill charges that complainant bought from the Amity Land Company, October 1, 1895, a tract of land in Prowers county, and one water right in the Amity Canal for irrigating the land.   The Amity Canal was begun February 21, 1887, and was constructed pursuant to section 2339, Rev. St. U. S. [U. S. Comp. St. 1901, p. 1437], and acts of Assembly of the state of Colorado approved February 11, 1881 (3d Sess., p. 161), and an amendment of that act approved April 20, 1887 (6th Sess., p. 314).   These acts of Assembly are set out in the bill.   March 30, 1887, a plat of the Amity Canal was filed in the office of the county clerk and recorder, as required by the act of 1881, claiming an appropriation of 850 cubic feet per second of time of the waters of the Arkansas river.   Complainant then gives the history of the Home Ranch Ditch, which was begun November 4, 1886, and not recorded pursuant to the act of Assembly of 1881 until December 3, 1887.   The Home Ranch Ditch was acquired by the respondent the Lamar Canal Company, and was an important factor in the controversy which arose between the Amity Canal Company and the Lamar Canal Company concerning their respective appropriations of the waters of the Arkansas river.   Complainant further charges that the acts of 1881 and 1887 were universally accepted, and in 1887, when the Amity Canal was begun, a custom and practice prevailed of recording appropriations as required by the act of 1881.   Reference is then made to certain acts of Assembly of the state of Colorado, under which the relative rights of appropriators of water for irrigating lands could be determined in district courts of the state, and the charge is made that in some proceedings under such acts the acts of 1881 and 1887 respecting the record of titles were recognized and enforced.   November 24, 1893, the Lamar Canal Company, respondent in this suit, brought suit against the Amity Land & Irrigation Company and others to determine the rights of takers of water in District No. 67, where their respective canals were located.   In that suit respondent claimed that the Home Ranch Ditch was begun November 4, 1886, and that maps and plats of that ditch were filed as required by the acts of February 11, 1881, and of April 20, 1887.   In that suit the Amity Land & Irrigation Company, which then owned the Amity Canal, appeared and claimed that the Amity Canal was begun February 21, 1887, and a plat thereof was filed March 30, 1887, as required by the acts of 1881 and 1887.   After further proceedings in the district court, a decree was entered July 1, 1895, in which the acts of 1881 and 1887 were recognized as valid and effectual, and the appropriation of the Home Ranch Ditch was postponed to that of the Amity Canal because of the earlier record of the latter under the acts of 1881 and 1887.   The case was taken to the Supreme Court, and the result is stated in the seventeenth paragraph of the bill as follows:

That from the decree of said district court the said Lamar Canal Company took an appeal to the Supreme Court of the state of Colorado, and on

the 17th day of July, 1899, said Supreme Court held said statutes of 1881 and 1887 unconstitutional, because the title thereof was not in compliance with section 21, art. 5, of the Constitution of the state of Colorado, and remanded said proceedings to said district court of Bent county for further proceedings in accordance with said opinion.

Other averments are made to show the quantity of water allowed to the Amity Canal in times of scarcity, which is not sufficient for all its customers. If augmented by the appropriation of the Home Ranch Ditch, which was 72.09 cubic feet of water per second of time, complainant and other shareholders in the Amity Canal would be much better supplied.

The prayer of the bill is that complainant be given the water to which he is entitled in priority and preference to the respondent the Lamar Canal Company.

In the first paragraph of his brief, counsel for complainant states his case in this language:

The theory upon which the plaintiff claims that the facts set forth in the bill constitute a right of action is that the title to the use of water for irrigation from the natural streams of the arid region is deraigned from the general government by virtue of its original ownership and control of said streams, and that one who, in appropriating water, complies with the acts of Congress concerning the use of said streams, and the laws, customs, and usages of the state in which the appropriation is made which regulate or prescribe the manner of making appropriations and acquiring priority of right to the water, thereby establishes certain contract rights, which cannot be impaired either by subsequent legislation or judicial action. Said acts of Congress, and the laws, customs, and usages of Colorado prevailing at the time the appropriation set out in the bill was made, therefore enter into a statement of the plaintiff's cause of action; they being in fact elements of a contract, the impairment of which by the defendants it is sought to prevent in this action.

And on page 7 is this further statement:

In this discussion we start with the proposition that, under the acts of Congress of 1866 [Act July 26, 1866, 14 Stat. 251] and 1870 [Act July 9, 1870, 16 Stat. 217], the said statutes of 1881 and 1887, the plaintiff, by reason of the appropriation of water theretofore made through the Amity Canal, and his purchase of an interest therein, obtained the benefit of a contract, which would be impaired if the decision of the Supreme Court in the adjudication proceedings in District 67 is to prevail.

I am unable to perceive an element of contract with the United States or with the state of Colorado in the whole course of the bill. The waters of flowing streams are publici juris—the gift of God to all His creatures. Blackstone (book 2, p. 14) has the following:

But after all, there are some few things which, notwithstanding the general introduction and continuance of property, must still unavoidably remain in common, being such wherein nothing but an usufructuary property is capable of being had; and therefore they still belong to the first occupant during the time he holds possession of them, and no longer. Such (among others) are the elements of light, air, and water.

A paragraph from Kent's Commentaries often quoted by the courts is a clear statement of the common law:

Every proprietor of lands on the banks of a river has naturally an equal right to the use of the water which flows in the stream adjacent to his lands, as it was wont to run (currere solebat), without diminution or alteration. No proprietor has a right to use the water to the prejudice of other proprie-

tors above or below him, unless he has a prior right to divert it, or a title to some exclusive enjoyment. He has no property in the water itself, but a simple usufruct while it passes along. "Aqua currit et debet currere ut currere solebat." Though he may use the water while it runs over his land as an incident to the land, he cannot unreasonably detain it or give it another direction, and he must return it to its ordinary channel when it leaves his estate. Without the consent of the adjoining proprietors, he cannot divert or diminish the quantity of the water which would otherwise descend to the proprietors below, nor throw the water back upon the proprietors above without a grant or an uninterrupted enjoyment of twenty years, which is evidence of it. This is the clear and settled doctrine on the subject, and all the difficulty which arises consists in the application. 3 Kent's Commentaries, 439, side paging.

To the same effect is section 5 of article 16 of the state Constitution, which declares that the water of every natural stream is the property of the public.

The act of Congress of 1866 is, in terms, a recognition of local customs and laws in the mining states and territories, which authorized the diversion of water for mining and agricultural purposes. Atchison v. Peterson, 20 Wall. 507, 22 L. Ed. 414; Basey v. Gallagher, 20 Wall. 670, 22 L. Ed. 452.

In Broder v. Water Company, 101 U. S. 274, 25 L. Ed. 790, the meaning and effect of the act is perspicuously stated:

It is the established doctrine of this court that rights of miners who had taken possession of mines and worked and developed them, and the rights of persons who had constructed canals and ditches to be used in mining operations and for purposes of agricultural irrigation, in the region where such artificial use of the water was an absolute necessity, are rights which the government had, by its conduct, recognized and encouraged, and was bound to protect, before the passage of the act of 1866. We are of opinion that the section of the act which we have quoted was rather a voluntary recognition of a pre-existing right of possession, constituting a valid claim to its continued use, than the establishment of a new one.

The local customs and laws thus sanctioned and approved by the act of 1866 enlarged the common law in respect to the use which could be made of water, but they held nothing in the way of granting a right by the general government or the state government.

Probably the act gave the right of way for constructing ditches over the public lands to be used in conveying water as declared in the Broder Case, but it does not appear that the Amity Canal, or any part of it, is located on government land, or was so located when it was built.

Section 6 of article 16 of the state Constitution reads as follows:

The right to divert unappropriated waters of any natural stream for beneficial use shall never be denied. Priority of appropriation shall give the better right, as between those using the water for the same purpose.

I do not see that it means more than the act of Congress of 1866. In the language of the Supreme Court, it is a "recognition of a preexisting right of possession," rather than the establishment of a new one.

One who diverts water from a flowing stream for a beneficial purpose may have the use of it so long as he conforms to the law regulating such matters, but he has no contract with or grant from the government, federal or state, in respect to his privilege.

Turning from the idea of complainant's counsel that he stands upon a contract with the federal government, and with the state government, to his further argument that this court may and should review the decision of the 'Supreme Court in the appropriation suit, reported in 26 Colo. 370, 58 Pac. 600, 77 Am. St. Rep. 261 (Lamar Canal Co. v. Amity Land & Irrigation Co.), not much need to be said on the subject. In this aspect of his case, complainant, as a citizen of Minnesota, invites the court to consider and determine the validity of the recording acts of 1881 and 1887, notwithstanding the decision of the Supreme Court of the state declaring those acts to be invalid. The familiar rule which commits to the courts of the state the interpretation of its Constitution and laws precludes all discussion of the subject. Here and elsewhere, in all courts and in all forms of proceeding, the decision of the Supreme Court setting aside the acts of 1881 and 1887 is conclusive upon all parties in interest. Whether complainant was a party to the appropriation suit is not material to the question. The Supreme Court may review and reverse its decisions, but no other court has authority of that character.

The demurrer to the bill is sustained, and the bill dismissed, at complainant's costs.