NIELS RASMUSSEN, APPELLANT, V. AUGUST BLUST ET AL., APPELLEES.

FILED OCTOBER 9, 1909. No. 15,514.

1. **Waters: PUBLIC LANDS: IRRIGATION RIGHTS: SUBSEQUENT ENTRIES.** One who has constructed upon the vacant public lands of the United States a system of reservoirs and ditches for the distribution of water appropriated by him for irrigation purposes, and has secured the approval of his plan and appropriation by the state board of irrigation, and was using his said reservoirs and ditches for the storage and distribution of such waters before said lands are entered, has a vested and accrued right within the meaning of sections 2339, 2340, Revised Statutes of the United States.

2. ———: ———: ———: ———. If such improvements have been made with the tacit or express consent of the entryman upon lands of the United States that have been entered as a homestead, and the entryman thereafter relinquishes his entry or it is canceled by the United States, and the said improvements are in actual use by the irrigator under the authority and with the approval of the state board of irrigation, a subsequent entryman takes said lands subject to a right of way for said ditches and the use by the irrigator of the land covered by the reservoir.

3. ———: ———: ———: FAILURE TO FILE MAP. The failure of the irrigator to file a map in the land office and to secure the approval of the secretary of the interior in accordance with the act of congress approved March 3, 1891, entitled "An Act to repeal timber-culture laws, and for other purposes," and the acts supplementary thereto do not destroy the privileges protected by sections 2339, 2340, Revised Statutes of the United States.

4. ——— : ——— : ——— : SUBSEQUENT ENTRIES.  A deed executed by an entryman before he is entitled to a receiver's final receipt and purporting to vest the grantee with a right of way over, and the privilege of constructing and maintaining a reservoir upon, the lands of the entryman, will not vest the grantee with any right against a subsequent entry of the land under the acts of congress unless such grantee, before the last entry, shall have constructed said improvements and was using them under such circumstances as to entitle him to protection under the laws of this state.

REHEARING of case reported in 83 Neb. 678.  *Reversed.*

ROOT, J.

This case is submitted on rehearing.  Our former opinion is reported in 83 Neb. 678.  The cause was submitted to the district court upon the pleadings, the affidavits of witnesses, and copies of public records.  A bill of exceptions containing the original evidence adduced is before us.  It is a difficult undertaking to sift the conflicting statements, and, without the aid of cross-examination, establish the controverted facts.  Were it not for the public importance of the questions of law involved, we would affirm the judgment because of the condition of the record.  The land in controversy is in Dawes county and in water district No. 2.  Comp. St. 1909, ch. 93a, art. II, sec. 3.  Rasmussen, the plaintiff, has resided in said county and has owned real estate therein for many years next preceding the institution of this suit.  In 1898 or 1899, he appropriated the waters in the Big Cottonwood creek and in the south branch of the Cottonwood creek for the irrigation of lands in sections 18, 19, 28, 29 and 33, town 33, range 51, in said county, and other lands, and his appropriation was duly approved by the state board of irrigation August 3, 1899.  In September, 1899, he made a further appropriation for the benefit of said lands, adding six storage reservoirs to his scheme, and specifically referred to flood waters as a source of supply.  This appropriation was approved by the state board of

irrigation February 21, 1900. Plaintiff also joined with one Carlson in appropriating water from Sand creek for the benefit of lands not above described, but included in Rasmussen's irrigation system. In the prosecution of the work involved in the construction of said plant, plaintiff has dug and continuously extended necessary ditches and has constructed at least two of said reservoirs. The state board of irrigation has extended the time fixed by it for the completion of said irrigation system, so that upon the institution of this suit Rasmussen was not in default in complying with the exactions of said board. In 1900, when Rasmussen commenced said work, there was but little, if any, land along the route of the main ditches that had not been entered under the homestead law. The northeast quarter of section 32, town 33, range 51, was vacant at said time. The northeast quarter of section 29, involved in this suit, had been entered as a homestead, and said entry was canceled June 17, 1904. The southeast quarter of said section had been entered under the homestead act by Isabella Ihrig, who thereafter married Cephas Ross. Her homestead entry was canceled April 14, 1904. John F. Howard entered the southwest quarter of said section 28 in 1890, and filed a relinquishment of his claim in January, 1904. In February, 1900, Mrs. Ross, née Ihrig, and husband conveyed to plaintiff a right of way for his irrigation ditches across, and the right to construct and maintain a reservoir upon, the southeast quarter of said section 29. In July, 1904, defendant, August Blust, entered the east half of said section 29 under the "Kinkaid act" (33 U. S. St. at Large, ch. 1801, p. 547), and thereafter released the southeast quarter of the southeast quarter thereof. The defendant, Anton Blust, thereafter entered said 40 acres in connection with the northeast quarter of section 32, and the southwest quarter of said section 28, under said act of congress. August Blust for years had owned, and still owns, the northwest quarter of section 28. Plaintiff's right to maintain ditches across all of the aforesaid tracts of land and to construct and maintain reservoirs thereon is in-

volved in this suit. In February, 1901, Rasmussen prepared a map, showing his proposed irrigation system, and filed it in the United States land office at Alliance, so that he might secure the benefits of the act of congress of March 3, 1891 (2 U. S. Comp. St., ch. 561, p. 1570, sec. 18). The evidence indicates that this application was forwarded to the commissioner of public lands, and by that official was returned for corrections. Plaintiff attempted to make the necessary alterations, and on the 9th day of April, 1902, refiled the application and map. June 13, 1902, the documents were returned to the land office as unsatisfactory and incomplete. Rasmussen testified that he was not notified of this fact, but the officers of the land office seem to have been satisfied that Rasmussen had notice, and, as he did not comply with their requisitions, his application was treated by the land department as abandoned.

1. Upon the facts just related, our former opinion held that plaintiff never secured any rights in the premises that could be enforced against the subsequent entrymen. Counsel for plaintiff still insists that, under the act of congress approved March 3, 1891, *supra,* and the facts in the instant case, his client secured, and still retains, an easement in the lands described. We are entirely satisfied with our former opinion upon this point. By the express terms of the statute a right of way can only be acquired over vacant government lands upon the approval of applicant's map by the secretary of the interior. The interior department has held that the filing of a map of location for a reservoir site does not reserve the land described therein, but affects only such lands as were vacant at the date of the approval of the map. *Highland Supply Ditch Company,* referred to in *Hamilton v. Pope,* 28 Land Dec. 402; *United States v. Rickey Land & Cattle Co.,* 164 Fed. 496. The map has never been approved, and none of the land is now vacant.

2. When August Blust and Anton Blust made their respective entries, the land, necessarily, was vacant. The preceding entries had been relinquished by the entrymen, or canceled by the government, and that condition had ex-

isted for several weeks. The evidence in the record satisfies us that in July, 1904, Rasmussen had completed, and had been for some time operating, his low line ditch across the northeast quarter of section 29, and that he had a right of way across the northwest quarter of section 28.

The legislature has declared that the unappropriated waters in every natural stream within the state are public property, dedicated to the use of the people of the commonwealth, but subject to appropriation according to the terms of the statute. Comp. St. 1909, ch. 93a, art. II, sec. 42. The legislature has further provided: "All ditches constructed for the purpose of utilizing the waste, seepage, swamps, or spring waters of the state shall be governed by the same laws relating to the priority of right as those ditches constructed for the purpose of utilizing the waters of running streams; *Provided,* that the person upon whose lands the waste, seepage, swamp, or spring waters first arise shall have the prior right to the use of such waters for all purposes upon his lands." Comp. St. 1909, ch. 93a, art. II, sec. 44. To the state board of irrigation, an administrative body, has been committed the power to determine, in the first instance, between individuals or corporations and the state their respective rights to use the waters aforesaid. Under an unrevoked permit from said board, an applicant, who thereafter by virtue of that permit applies public waters to a beneficial use within the meaning of the irrigation law, obtains a vested right recognized and protected by the laws of Nebraska. Sections 2339 and 2340 of the United States Revised Statutes provide: "Section 2339. Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canals for the purposes herein specified is acknowledged and con-

firmed; but whenever any person, in the construction of any ditch or canal, injures or damages the possession of of any settler on the public domain, the party committing such injury or damage shall be liable to the party injured for such injury or damage.

"Section 2340. All patents granted, or pre-emption or homesteads allowed, shall be subject to any vested and accrued water-rights, or rights to ditches and reservoirs used in connection with such water-rights, as may have been acquired under or recognized by the preceding section."

In *Broder v. Water Co.,* 101 U. S. 274, it was held that the last cited statute merely acknowledges pre-existing rights, and that the owners of a ditch located on public land and in actual use will be protected against subsequent entrymen. The federal government does not by said act grant any estate, but merely recognizes such vested and accrued rights as "are recognized and acknowledged by the local customs, laws, and the decisions of courts." If the appropriator is first in time with reference to possession and use as compared with the date a homestead entry is made upon the real estate, the rights of the homesteader are junior and inferior. *Brosnan v. Harris,* 39 Or. 148; *Smith v. Hawkins,* 110 Cal. 122; *Maffet v. Quine,* 93 Fed. 347, 95 Fed. 199. The irrigator will be protected in his possession and application of the water so long as he conforms to the local law regulating his rights, but he has no contract with or grant from the government, federal or state, with respect to his privileges. *Mohl v. Lamar Canal Co.,* 128 Fed. 776.

The act of congress approved March 3, 1891 (2 U. S. Comp. St., p. 1570, sec. 18), extends to those in possession of public lands the benefit of that legislation, but, in our judgment, does not supersede the earlier statute. The act of 1866 recognizes rights created independent of the acts of congress, whereas the later acts confer rights upon certain named conditions. If the individuals or corporations who have appropriated and are applying public waters for beneficial purposes choose to avail themselves of the bene-

fits of the act of 1891, they may acquire a right of way 50 feet in width across vacant public lands, whereas under the act of 1866 a mere possessory right of way is recognized. Under the later act a record is made of the right of way and reservoir sites. The applicant under the act of March 3, 1891, need only survey the route for his proposed ditches and the sites for his reservoirs and file in the local land office a map of those surveys with certain other data. If the secretary of the interior approves the map, a base or determinable fee vests in the applicant in advance of possession and the making of improvements, and without reference to any local laws or customs.

In *Lincoln County Water Supply & Land Co. v. Big Sandy Reservoir Co.*, 32 Land Dec. 463, Mr. Secretary Hitchcock said: "While the clause above quoted from section 20 of the act of March 3, 1891, extends the benefits of that act to all canals, ditches or reservoirs theretofore constructed upon the public domain, among which is the right to file in that behalf with the land department a map of such canals, ditches and reservoirs, and secure the approval of the secretary of the interior thereof, yet the rights of claimants under section 2339 of the Revised Statutes are in nowise dependent upon said act or upon an approval of such maps."

Concerning the southeast quarter of section 29, the evidence establishes that Rasmussen relied upon the deed from Mrs. Ross, née Ihrig, to protect his right of way for the high line ditch across, and his reservoir site upon, that tract. At the time August Blust entered that land under the Kinkaid act, plaintiff had not constructed either of said improvements. Rasmussen did not secure any rights by virtue of the Ross deed as against the subsequent entryman, but he must either purchase or condemn if he concludes to extend his ditches across, and locate a reservoir upon, that land.

The evidence in the record concerning the feasibility of the high line ditch is irrelevant. The state board of irrigation has passed upon that feature of the dispute, and

the district court, in the first instance, has no jurisdiction of the subject. In our former opinion we failed to give plaintiff the benefit of sections 2339, 2340, Revised Statutes, *supra*. Upon more mature deliberation we are satisfied that the evidence does not sustain a judgment dismissing the petition. If the case is again tried, the evidence adduced may justify more comprehensive relief for plaintiff than we have indicated in this opinion; on the other hand, defendants may be completely exonerated.

The former opinion and judgment of this court are set aside, the judgment of the district court is reversed and the cause is remanded for further proceedings, and all taxable costs incurred up to the date of filing a mandate in the district court are taxed to plaintiff.

REVERSED.