[Civil No. 2139. Filed February 11, 1925.]

[232 Pac. 1016.]

THE GILA WATER COMPANY, a Corporation, and FRANK A. GILLESPIE, Appellants, v. JAMES B. GREEN, Appellee.

1. WATERS AND WATERCOURSES — WATER COMPANY'S RIGHT TO CON-STRUCT DAM HELD QUESTION OF LAW.—Whether water company sued for damages for flooding land ever had right to construct dam on premises below plaintiff's land, *held* question of law for court, in view of undisputed facts showing that defendant once had such right, created by appropriation in compliance with Laws of 1893, No. 86 (now Civ. Code 1913, par. 5338), and actual construction of first dam, and confirmed by Revised Statutes of the United States, sections 2339, 2340 (U. S. Comp. Stats., §§ 4647, 4648).

2. WATERS AND WATERCOURSES—RIGHTS OF ENTRYMAN INFERIOR TO PRIOR APPROPRIATOR OF WATER ON PUBLIC LANDS—"VESTED AND ACCRUED RIGHT."—One complying with local laws for appropriation of water and constructing works for diversion thereof on vacant public lands of United States, acquires "vested and accrued right," within Revised Statutes of the United States, sections 2339, 2340 (U. S. Comp. Stats., §§ 4647, 4648), which is superior to rights of subsequent entryman and carries with it right of way or ease-ment for impounding water.

---

2. What constitutes appropriation of water, see note in 60 Am. St. Rep. 799. See, also, 27 R. C. L. 1258.

3. WATERS AND WATERCOURSES — FEDERAL ACTS CONFIRMING WATER RIGHTS ACQUIRED UNDER TERRITORIAL STATUTES, HELD NOT REPEALED.—Act of Congress of March 3, 1891, section 19 (U. S. Comp. Stats., § 4935), does not repeal Revised Statutes of the United States, sections 2339, 2340 (U. S. Comp. Stats., §§ 4647, 4648), confirming rights to water and reservoir sites, created by compliance with Laws of 1893, No. 86 (now Civ. Code 1913, par. 5338), as to appropriation of water and actual construction of first dam, but simply provides method of acquiring more extensive and secure right by filing maps with register of land office for approval by Secretary of Interior.

4. TRIAL—TEST OF EXISTENCE OF FACT QUESTION FOR JURY STATED.— Whether there is fact question for jury depends on whether there is conflicting evidence, or, if not, whether there are facts to be inferred from undisputed evidence, and, if so, whether reasonable minds might draw different conclusions as to proper inference.

5. WATERS AND WATERCOURSES—SUBMISSION OF ISSUE OF ABANDONMENT OF WATER RIGHTS HELD NOT WARRANTED.—In action for damage by flooding land, evidence *held* not to warrant submission to jury of question whether defendant intended to abandon rights to water and connected works, acquired by original appropriation and construction of first dam, under Laws of 1893, No. 86 (now Civ. Code 1913, par. 5338) and confirmed by Revised Statutes of the United States, sections 2339, 2340 (U. S. Comp. Stats., §§ 4647, 4648), though defendant applied for canal and reservoir rights under Act of Congress of March 3, 1891 (U. S. Comp. Stats., § 4934 et seq.), and twenty-five years elapsed after original dam washed out before present one was commenced.

See (1) 40 **Cyc.**, p. 709.   (2) 40 **Cyc.**, p. 713.   (3) 40 **Cyc.**, p. 710 (1926 Anno.).   (4) 38 **Cyc.**, pp. 1515, 1537.   (5) 40 **Cyc.**, p. 733.

APPEAL from a judgment of the Superior Court of the County of Maricopa.   F. H. Lyman, Judge. Judgment reversed.

Mr. C. F. Ainsworth, for Appellants.

Messrs. Kibbey, Bennett, Gust & Smith, for Appellee.

WINDES, Superior Judge.—This is an action by appellee, James B. Green, against defendants, the

5.   See 27 R. C. L. 1283.

Gila Water Company, a corporation, and Frank A. Gillespie, for damages caused by the flooding of plaintiff's land. The alleged wrong causing the damage was that the defendants, during the years 1919–1921, constructed a dam across the Gila River a short distance below the land owned by the plaintiff, which dam obstructed the free flow of the waters of the river and caused them to overflow plaintiff's land. The defendants answered, admitting the construction of the dam, and, by way of justification therefor, alleged that the defendant the Gila Water Company is the successor in interest of the Peoria Canal Company, an Arizona corporation, which had in the years 1893 and 1894 constructed a dam across the Gila River in the same place, of the same height and forming the same reservoir as that formed by the present dam; that at the time of the construction of the first dam the lands of the plaintiff were unoccupied lands belonging to the United States government, and that by reason of these facts the defendant the Gila Water Company had a prior vested right and easement upon the land of the plaintiff, and that whatever rights the plaintiff had were subordinate to the rights of the defendant the Gila Water Company to maintain its dam. The plaintiff then replied, alleging in substance that in 1887 Louis Wolfley and Boyd A. Johnson located the dam site; that in 1890 Wolfley and Johnson conveyed the same to the Gila Bend Reservoir & Irrigation Company, which started the construction of the dam; that in 1893 this last-mentioned company conveyed its right to the Peoria Canal Company, which company in the years 1893 and 1894 constructed a dam, which in the same year was washed out by the flood waters of the river. It was further alleged in the reply that the premises remained in this condition until May 24, 1901, when they were conveyed to the de-

fendant the Gila Water Company; that from the time of the destruction of the dam in 1894 until 1919, when the defendant the Gila Water Company began construction of this dam, the premises remained in this dilapidated condition.

There are several alleged errors relied upon by the appellant for the reversal of this case. Owing to the disposition that is to be made of the case, we will consider them out of the order in which they are presented.

In submitting the case the trial court instructed the jury in part as follows:

"Now these are the questions which you have to determine: First, whether or not the plaintiff's lands have been damaged in the way he has indicated, and if they have been damaged, whether or not the defendant Gila Water Company had a right to maintain, had ever had a right to maintain a dam at the place indicated; and, second, or third, if it ever did have a right to maintain a dam, such a dam as it now has at that point, that right has ever been lost by abandonment. Those are the several questions which you will have by your verdict to determine. . . . If you find from the evidence that the lands of the plaintiff were flooded by the waters of the Gila river by reason of the backing up of said waters through the construction and maintenance of the dam of the defendant Gila Water Company and the defendant Gila Water Company or its predecessors in interest, either never had the right to cause said lands to be so flooded, or if it ever had such right, had forfeited said right through abandonment, your verdict should be for the plaintiff."

Under the above instruction the jury could find a verdict for the plaintiff if they found that the defendant or its predecessors in interest never did have a right to construct the dam, or, if they found that the right once existed, they could then find for the plaintiff if they further found that the defend-

ant had abandoned the right it once had. The contention of the appellant is that since there is no dispute as to the facts bearing upon the right of the defendant or its predecessors in interest to construct a dam at the point where it is now constructed, and no dispute as to the facts bearing upon the question of abandonment of the right, if it ever existed, these questions were merely law questions, and should not have been submitted to the jury for its determination. ·

There is no room for dispute as to the following facts: That in the years 1893 and 1894, a dam was constructed across the Gila River on the same dam site occupied by the present dam, the construction of which is the subject of complaint; that the predecessors in interest of the defendant the Gila Water Company complied with the laws of the then territory of Arizona for the appropriation of water and reservoir site prior to the construction of the dam in 1893; that this dam washed out within a year after its construction; that subsequently the defendant the Gila Water Company became involved in litigation over these rights, which litigation terminated in the year 1909 in favor of the defendant the Gila Water Company; that in May, 1907, appellant filed in the United States Land Office an application and map for right of way for a canal in connection with these works, and, in December, 1909, defendant filed an application for a reservoir site, both applications being under the Act of 1891; that there was filed a protest against the approval of the application for the reservoir site; hearing was had in the local land office upon this protest in 1911, an appeal was taken and the matter finally disposed of in favor of appellants in 1913; that the construction of the present dam was commenced in the year 1919; that whatever rights the original

locators and constructors of the first dam had were legally conveyed and transferred to the defendant the Gila Water Company; and that the inception of the plaintiff's rights, if any, was March 22, 1909, the date upon which his predecessors in interest filed upon the plaintiff's land as a homestead.

Under this set of facts it is not for the jury to determine whether the defendant the Gila Water Company ever had a right to construct a dam on these premises. Under this set of facts the defendant the Gila Water Company did under the law at one time have a right to construct a dam, and create a reservoir at this place. This right was created by compliance with the statutes of the territory relating to the appropriation of water and the actual construction of the first dam in 1893. When the predecessors in interest of the defendant the Gila Water Company had done this, they had rights to the water and reservoir sites, which the laws and the courts of the territory recognized and under and by virtue of sections 2339 and 2340, United States Revised Statutes (9 Fed. Stats. Ann. 2d ed., pp. 1349 and 1360 [U. S. Comp. Stats., §§ 4647, 4648]), the United States government confirmed these rights. In fact, the Supreme Court of the territory of Arizona and the Supreme Court of the United States have said that the defendant the Gila Water Company had these rights. *Gila Bend Reservoir & Irr. Co.* v. *Gila Water Co.,* 9 Ariz. 57, 76 Pac. 990; 202 U. S. 270, 50 L. Ed. 1023, 26 Sup. Ct. Rep. 615; 205 U. S. 279, 51 L. Ed. 801, 27 Sup. Ct. Rep. 495; 214 U. S. 491, 53 L. Ed. 1057, 29 Sup. Ct. Rep. 704 (see, also, Rose's U. S. Notes). The litigation in the above case was terminated March 15, 1909, and certainly it cannot be said that at that time the defendant, the Gila Water Company, did not have the right to construct this dam.

When one has complied with the local laws for the appropriation of water, and has constructed upon vacant public lands of the United States the works for the diversion of that water, he thereby acquires a vested and an accrued right within the meaning of said sections 2339 and 2340, United States Revised Statutes, and the rights thus acquired are superior to the rights of a subsequent entryman upon said lands. *Cottonwood Ditch Co.* v. *Thom,* 39 Mont. 115, 101 Pac. 825, 104 Pac. 281; *Rasmussen* v. *Blust et al.,* 85 Neb. 198, 133 Am. St. Rep. 682, 122 N. W. 862; *Keiler* v. *McDonald,* 37 Idaho, 573, 218 Pac. 365; *Chicago, B. & Q. R. Co.* v. *McPhillamey,* 19 Wyo. 425, Ann. Cas. 1913E, 101, 118 Pac. 682.

In the last-mentioned case the court said:

"There are numerous decisions to the effect that, if an appropriator is first in time with reference to possession and use as compared with the date an entry is made, the rights of the entryman are junior and inferior."

In *Cottonwood Ditch Co.* v. *Thom, supra,* the court in passing upon the priority of one who was claiming by appropriation, and under sections 2339 and 2340, United States Revised Statutes, and one who was claiming under a homestead filing, used the following language:

"It seems clear to us that Congress, in these two sections, not only recognized and acknowledged all such vested and accrued water rights, including all ditches and reservoirs used in connection therewith, as were recognized and acknowledged by the local customs, laws, and decisions of the courts, and intended that all such rights should be maintained and the owners thereof protected. . . . Plaintiff's ditch was completed across the land in question, and plaintiff's predecessors were in possession of the same, at the time defendant made his home-

stead filing. This being so, it follows that defendant took his homestead subject to the right of way for plaintiff's ditch, and that the district court was correct in adjudging that plaintiff was entitled to have its rights confirmed and its title quieted.''

It is quite clear, therefore, that upon the building of the first dam a right vested which carried with it the right of way or easement for the purpose of impounding water.

Appellant claims his title through two sources: First, the original appropriation under the Arizona statutes of 1893 (Laws 1893, No. 86), which is now paragraph 5338, Revised Statutes of Arizona of 1913 (Civ. Code), and the construction of the first works and the confirmation, under sections 2339 and 2340, United States Revised Statutes, of the rights thus acquired; second, by a compliance with the Act of Congress of March 3, 1891, commonly known as the Right of Way Act (8 Fed. Stats. Ann., 2d ed., pp. 803–805 [U. S. Comp. Stats., § 4934 et seq.]).

Paragraph 5338, Revised Statutes of 1913 (Civ. Code), provides, after designating what must be done in order to appropriate, as follows:

''That said person or persons, company or corporation, after posting and filing their notice as herein provided, shall within a reasonable time thereafter construct their dam or dams, reservoir or reservoirs, canal or canals, as the case may be, and shall after such construction use reasonable diligence to maintain the same, for the purposes in such notices specified, and failure within a reasonable time after posting and filing of such notice or notices, to construct such reservoir, dam or canal as in such notice specified or to use reasonable diligence after such construction to maintain the same, shall be held to work a forfeiture of such right to the water or waters attempted to be appropriated.''

Sections 2339 and 2340, United States Revised Statutes, *supra* (Fed. Stats. Ann., 2d ed., pp. 1349, 1360;

U. S. Comp. Stats. §§ 4647, 4648), provide in part as follows:

"Section 2339. Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canals for the purposes herein specified is acknowledged and confirmed. . . .

"Sec. 2340. All patents granted, or pre-emption or homesteads allowed, shall be subject to any vested and accrued water rights, or rights to ditches and reservoirs used in connection with such water rights, as may have been acquired under or recognized by the preceding section."

Section 19 of the Act of March 3, 1891, *supra* (8 Fed. Stats. Ann., 2d ed., p. 803; U. S. Comp. Stats., § 4935), provides in part as follows:

"That any canal or ditch company desiring to secure the benefits of this act shall, within 12 months after the location of 10 miles of its canal, if the same be upon surveyed lands, and if upon unsurveyed lands within 12 months after the survey thereof by the United States, file with the register of the land office for the district where such land is located a map of its canal or ditch and reservoir; and upon the approval thereof by the Secretary of the Interior the same shall be noted upon the plats in said office, and thereafter all such lands over which such rights of way shall pass shall be disposed of subject to such right of way."

The appellant may claim through either or both of these sources. In other words, the act of 1891 does not repeal sections 2339 and 2340, *supra,* but is simply a method of acquiring a more extensive and secure right than is gotten through these sources. *United States* v. *Utah Power & Light Co.*

(D. C.), 208 Fed. 821; 1 Wiel on Water Rights, § 440; *Rasmussen* v. *Blust et al., supra; Cottonwood Ditch Co.* v. *Thom, supra.* In *Rasmussen* v. *Blust et al.,* in discussing these two statutes the court said:

"The act of Congress approved March 3, 1891, *supra,* extends to those in possession of public lands the benefit of that legislation, but in our judgment does not supersede the earlier statute."

In the case of *United States* v. *Utah Power & Light Co., supra,* the contention was that the act of 1891 repealed section 2339, United States Revised Statutes, and, in passing upon this, the court said:

"Was section 9 [meaning section 9 of the Act of July 26, 1866, carried into the Revised Statutes as section 2339] repealed by this act [meaning the act of 1891] with respect to water rights for irrigation? This statute grants some rights additional to those granted by section 9, and is subject to burdensome conditions—to the small irrigator conditions so burdensome as in some cases to preclude the exercise of the right. If there was any class the government might be presumed to specially favor, it was the irrigator of land, and yet, if this was a repeal, he was singled out to be discriminated against. So that at an early date the land department of the government held that this statute was cumulative and did not repeal section 9 as to ditches for irrigation."

The next matter for determination is whether the question of abandonment should have been submitted to the jury. It is a fundamental and well-known principle of law that the test in determining whether there is a question of fact to be submitted to the jury is, first, whether there is conflicting evidence; and, second, if the evidence is not in conflict whether there is a fact or facts to be inferred from the undisputed evidence. If such inference is to be made,

might reasonable minds draw different conclusions as to the existence or nonexistence of the fact to be inferred? In other words, would reasonable persons disagree as to what is the proper inference? In this case all the evidential facts indicating an abandonment or lack of abandonment, are undisputed. The only fact upon which appellant and appellee are not agreed is the fact of the appellant's intention to abandon. The intention is the paramount object of inquiry.

Applying the test above stated, we think that the only inference that could possibly be drawn is that the appellant the Gila Water Company never intended to abandon its rights to the water and dam site. The Gila Water Company has consistently and stubbornly fought for these rights through the territorial courts, the Supreme Court of the United States, and the Department of the Interior of the United States, from the year 1902 when suit was filed to test appellant's title until the year 1913 when the protest against the approval by the Secretary of the Interior of its application under the act of 1891 was decided. The appellant has contended, and strenuously contended, that it had these rights and that they should be recognized. The approval by the Secretary of the Interior of appellant's application for reservoir site under the act of 1891 was finally secured (according to evidence offered and rejected by the trial court) in the year 1916. Not until this date were all possible questions concerning an absolutely secure title to this property finally settled. The construction of the present dam, which is now in existence and operating, was commenced three years later. In the face of this situation it seems to us that no one can reasonably say there is any evidence that would warrant the inference that the appellant intended to abandon its rights

to the water and the works connected therewith. In fact the circumstances point to but one inevitable conclusion, that the appellant never did intend to abandon its rights to this property.

The appellant's applications for canal and reservoir rights, under the act of 1891, do not argue or indicate any intention to abandon what rights it had under and by virtue of the original appropriation and construction of the first dam. No one can reasonably say that appellant's attempt to acquire these additional privileges is any indication of its intention to abandon such rights as it had prior to its compliance with the act of 1891.

Appellee makes much over the fact that twenty-five years elapsed from the time the original dam washed out and the commencement of the present dam. It is true that this fact unexplained would be very strong evidence of an intention to abandon, but there is a most valid excuse for this delay. No one could expect the investment of sufficient funds for the construction of works of this magnitude until all alleged or possible flaws in the title had been rendered unquestionable.

We are thoroughly convinced that under no theory of the evidence would the jury be justified in finding that the appellant ever intended to abandon its rights to the water or reservoir site. The tenacity of the appellant in battling for these rights through the courts and the Department of the Interior, and the ultimate construction of the present works, irrefutably establish the fact that it never intended to abandon these rights. The question of abandonment should not have been submitted to the jury.

We are, therefore, of the opinion that appellant under the law had a right to build the present dam, that there has been no abandonment of that right,

and that such right is prior and superior to the rights of plaintiff.

The judgment of the lower court will be reversed, with instructions to enter judgment for defendants.

McALISTER, C. J., and ROSS, J., concur.

LYMAN, J., having been disqualified, Honorable DUDLEY W. WINDES, Judge of the Superior Court of the County of Maricopa, was called to sit in his stead.