[No. 4198.]

## OSWALD BRODER v. NATOMA WATER AND MINING COMPANY.

RIGHTS OF DITCH ON PUBLIC LANDS.—Persons who, under the local customs and decisions of the courts in California, had acquired a right to the use of water in a ditch, prior to the passage of the act of Congress of July 26, 1866, acquired by said act a right of way, and of the ditch through which the water was running, over the public lands, and the subsequent grantees of the United States take subject to the easement.

LANDS GRANTED TO THE PACIFIC RAILROAD COMPANIES.—The Pacific Railroad Companies, by virtue of the acts of Congress of 1862 and 1864, granting them lands to aid in the construction of a railroad, did not acquire an equity in the land granted which State courts are bound to respect, until commissioners, appointed under the fourth section of the act, certified that the railroad and telegraph line had been completed on a subdivision examined by them.

IDEM.—The Pacific Railroad Companies, by virtue of the acts of Congress of 1862 and 1864, granting them lands, did not acquire a right to abate ditches on such lands as a nuisance, provided the ditch had acquired a right to the use of water which was recognized by the local customs and decisions of the courts prior to the passage of the act of Congress of July 26, 1866, granting the right of way to ditch-owners over the public lands.

APPEAL from the District Court, Sixth Judicial District, County of Sacramento.

The defendant, in 1853 and 1854, constructed a ditch to convey water for mining purposes from the South Fork of the American River, in the gold regions, to a point below Folsom. The ditch was about thirty miles in length, and of a capacity to carry fourteen thousand inches of water, and was excavated to carry water for sale to miners and others, and passed over public lands of the United States

which were surveyed by the United States prior to 1865. The ditch passed through sections 28, 29, 32 and 33, of township ten north, of range eight east, Mount Diablo base and meridian. The plaintiff derived title to the northeast quarter of section 32 by a patent from the United States dated November 1, 1867. He had been living on the land for many years prior to August 18, 1866, but filed his declaratory statement as a pre-emptor on the latter day. He derived title also to the northeast quarter of section 32 by deed from Jacob Broder, dated October 17, 1871. Jacob Broder received a patent from the United States on the 1st day of December, 1868. The United States, on the 27th day of June, 1867, issued to the Central Pacific Railroad Company, under the acts of Congress of 1862 and 1864, granting lands in aid of a railroad and telegraph line, a patent for the south half of the northwest quarter and the north half of the southwest quarter of section 33, and the northwest quarter of the southeast quarter, and the north half of the northwest quarter of section 33. The said company conveyed the land, part of it to Oswald Broder, and a part to Jacob, who then conveyed to Oswald. The lands were cultivated by the plaintiff, and he commenced this action on the 19th day of October, 1871, to abate the ditch as a nuisance. The land was within the division of the "forty consecutive miles" of the railroad which the railroad company completed in December, 1865, as stated in the opinion. The court rendered judgment for the defendant, and the plaintiff appealed.

*R. C. Clark and McKune & Welty,* for the Appellant, argued that the certificate of the commissioners appointed to report upon the completion of sections of the railroad was only evidence upon which the Department of the Interior acted in issuing the patent, and that the right of the railroad company to the land attached upon the completion of the road.

*C. G. W. French and C. A. Tuttle,* for the Respondent, argued that until the certificate of the commissioners was

obtained the legal title was in the United States, and cited
*Railway Co.* v. *Prescott* (16 Wallace, 603), and Sec. 4 of the
act of Congress.

By the COURT:

The defendant having shown that prior to the act of Con-
gress of July 26, 1866, it had acquired a right to the use of
the water which was "recognized and acknowledged by the
local customs, laws and decisions of courts," that act op-
erated a grant to it of the right of way, and of the ditch
through which the water was running at the date of the
passage of the act.   The subsequent grantees of the United
States of tracts through which the ditch ran, took subject
to defendant's easement.

There is no question that the government title to a por-
tion of the lands described in the complaint was acquired
by defendant after the passage of the act above mentioned;
for the remainder, the plaintiff took deeds from the Central
Pacific Railroad Company, the patents of the United States
to that company having also been issued subsequent to the
act of Congress aforesaid.

It results from the foregoing statement that the judgment
of the District Court must be affirmed, unless the Central
Pacific Company had a "perfect equity" at the date of the
enactment of the United States statute of July 26, 1866.
As establishing such equity, plaintiff relies on the fifth find-
ing of the District Court, which is, that in the month of
December, 1865, the railroad company completed forty con-
secutive miles of its road.   Section 4 of the act of 1862, "to
aid in the construction of a railroad and telegraph line,"
etc., provides that (on the completion of forty miles, etc.)
the President shall appoint three commissioners to examine
the same, and report to him in relation thereto; that if it
shall appear to him that forty consecutive miles of said rail-
road and telegraph line have been completed and equipped
in all respects as required by this act, then, upon certificate
of said commissioners to that effect, patents shall issue;
"and patents shall in like manner issue as each forty miles

of said railroad and telegraph line are completed, upon certificate of said commissioners."

The law places in the President or Board of Commissioners, or both, the power of determining whether the railroad company has performed the conditions prerequisite to the issuing of the patents. It is manifest, that until the commissioners made their certificate, the company had no vested equity which can be recognized by the State courts. There is no finding that such certificate was made prior to the passage of the act of July 26, 1866.

Judgment affirmed.