## MIOCENE DITCH CO. v. JACOBSON et al.

(Second Division. Nome. November 4, 1905.)

No. 1,412.

1. EQUITY—MAXIMS—FIRST IN TIME, PRIOR IN RIGHT.

Where a ditch or flume for carrying water for mining purposes is built across a valid placer mining location without condemnation proceedings or the consent of the mine owner, and a contest arises, the rule "first in time, first in right," prevails.

Jennison v. Kirk, 98 U. S. 453, 25 L. Ed. 240, cited and followed.

## 2. WATERS AND WATER COURSES—MINING DITCH.

By the universal law of the Pacific coast states and territories, as declared by their courts, the right to use the waters flowing over the public lands of the United States, and to transport them across the public domain to other parts of the public domain, in preference to a like right in others, depends upon priority of appropriation. Priority of appropriation gives priority of right in such cases. The origin of all rights possible to be acquired in the waters must be traced to the first act of appropriation by the water claimant. If these rights spring into existence after rights have become vested in others, the water rights are subordinate to the rights of the others already vested.

## 3. SAME—INJUNCTION.

Where a ditch or flume is built across a prior valid mining location without the consent of the mine owner, and without condemnation proceedings, an injunction will be denied to prevent the mine owner from working his claim fully, though by doing so he may destroy the ditch or flume.

The plaintiff company is a corporation organized under the laws of California, and has qualified itself to do business in the District of Alaska by complying with all laws of the United States relating to foreign corporations doing business in the District of Alaska.

Its charter empowers it to own and operate mines and mining claims within the District of Alaska, to own and appropriate water and water rights for private and public use, and to build canals, ditches, etc., and to lay piles for supplying water to its own mines and for the general use of the public in the District of Alaska; and ever since the year 1903, when its ditch, pipe, and flume were completed, it has been the owner in possession of a ditch, flume, and pipe line extending from Nome river to Anvil creek in the Cape Nome mining precinct, Alaska.

The construction of the line was begun in 1901, as alleged in the complaint, and was completed in 1903, and the capacity

of the ditch from Nome river to Hobson creek is 2,100 miner's inches of water, and from Hobson creek to Anvil creek it has a capacity of 5,000 miner's inches of water.

Since the completion of said flume and pipe line plaintiff has used its line for the purpose of working placer mining claims owned and leased by it, and for the purpose of farming out said waters for hire, to be used by other persons, corporations, and the public generally for mining purposes.

The plaintiff alleges that since the completion of its line in 1903 it has been carrying and conveying through its line all the available waters of Nome river and its tributaries to the full capacity of its ditch, a distance of some 30 miles, to Anvil, Glacier, and Dexter creeks, for its use and the use of the public generally. The region through which its line is constructed is devoted exclusively to the mining industry, and many mines in that locality are dependent upon said source of water supply, and without the same they would become unprofitable as mining claims.

The complaint of plaintiff charges that on September 11, 1905, the defendants, their servants, agents, and employés, wrongfully and unlawfully, at a point between Divide creek and Dorothy creek, by means of water under pressure above plaintiff's ditch, washed out, broke, and destroyed plaintiff's ditch, and that they have since threatened to again sluice, wash out, and destroy the plaintiff's ditch at different points between said Divide and Dorothy creeks.

It further sets forth that the water flowing on September 18, 1905, where defendants were then threatening to wash out said ditch, is worth to the ditch company $5,000 per day, and if its line should be further interfered with the plaintiff would be irreparably damaged in the sum of $5,000 per day.

It contains the usual allegations that plaintiff has no plain, speedy, or adequate remedy at law for the threatened trespass of defendants, with the further allegations that defendants are

insolvent, and unable to respond in damages, and that the threatened damage would be a continuing one.

These facts were alleged in the complaint, and, upon the strength of them, as supported by the affidavit of J. T. Price to the effect that John Jacobson expressed in a conversation held September 17, 1905, with affiant an intention to go out to a point on Nome river between Divide creek and Dorothy creek, and there sluice, wash out, and destroy the Miocene Ditch Company's ditch, the plaintiff now prays for relief by injunction pendente lite.

On the showing thus made by the complaint and the accompanying affidavit an order to show cause was granted by the court, directing defendants to show cause why an injunction pendente lite should not be granted against said defendants, returnable September 21, 1905, and a restraining order was at the same time made, restraining the defendants, their agents, servants, attorneys, and employés, in the meantime from interfering with or trespassing upon plaintiff's ditch line until the hearing and decision upon the order to show cause.

By the case so presented ex parte there was ample warrant for the granting of the temporary restraining order. The ownership of the plaintiff in the ditch line, with all the rights annexed to the ownership, was asserted, and it was made to appear by the complaint that the defendants were mere trespassers upon the ditch line. Upon the facts disclosed at the hearing a case with some different phases and several new ones is disclosed. Among the objections filed to the grant of the injunction pendente lite was this: That the plaintiff constructed its ditch over the mining claims of the objecting defendants while the same were the property of the defendants, without proceedings had to condemn the right of way for the ditch over the claims, and without agreement, license, or other legal right, and, the company's entry upon and use of the

defendant's land being wrongful and contrary to law, it was a trespasser upon the defendant's domain.

This objection is supported as to its included statement of facts by the evidence, and the conclusion of law, that the company was the real trespasser in the case, it is obvious, must follow the facts. There was much testimony in affidavit form presented to the court at the hearing by the plaintiff, and less by the defendants.

The affidavits of the defendants, though of smaller volume than that of the plaintiff company, bear more closely upon the real issues involved in the controversy. The witnesses on both sides all stand before the court with equal claim upon the court for credence. The testimony of the defendants' witnesses reports facts within the observation, experience, and knowledge, whereas much of the evidence of the plaintiff partakes more of the opinions of the witnesses.

From all the testimony are gleaned the facts that the defendants all acquired title to the mining claims on and about Discovery gulch on the line of plaintiff's ditch and were the owners of the same early in the year 1902, and have been mining on much of said ground since March 21, 1902, at different times, and for varying periods; that these claims are the "Ruby Bench," "Omisk," "Rajah," "No. 4 above the mouth of Dorothy creek," "No. 3 on Discovery gulch," "No. 4 on Discovery gulch," and "Moonshine"; that the plaintiff's ditch was not constructed through said claims until 1903; that these several claims have all been prospected and developed by their owners on a common plan or system; that their mining operations conducted in the years 1902, 1903, 1904, and 1905 have revealed their ground to be valuable mining ground, and that it can be operated under hydraulic pressure with profit to the owners; that there are large bodies of such gold-bearing gravel in said claims; that they operated said claims by the use of water under high pressure in the year 1904, and continued to

so operate under their common plan and system in 1905, when water was obtainable from the hillside above their claims; that the plaintiff's ditch was constructed through their lands and at the point of the breach of the ditch without authority or permission from the defendant owners of said land, and without proceedings being begun to condemn the same according to law; and that the defendants washed away part of the plaintiff's ditch on ground so operated by them according to a common system, and in the usual and ordinary course of their mining operations, and upon land owned by some of them.

These are facts not overthrown by the evidence of the plaintiff; some of them are by implication admitted. Upon these facts turns the decision of the controversy now for consideration.

Albert Fink and Ira D. Orton, for plaintiff.

Wm. A. Gilmore and P. C. Sullivan, for defendants.

MOORE, District Judge. The question presented to us is: Is the plaintiff entitled to an injunction which will interfere with the reasonable and convenient working of a placer mining claim legally in the possession of its owner, which has been legally segregated from the public domain prior to an attempt by the plaintiff to appropriate a right of way across the claim?

It is a settled fact now that the defendants' rights to the enjoyment of the ground included in the claim were initiated early in the year 1902, while the plaintiff's rights to the enjoyment of such land, or any part thereof, if any it have, were instituted in 1903.

The rule "first in time, first in right" clearly applies to the above-stated condition of facts.

In Jennison v. Kirk, 98 U. S. 453, 25 L. Ed. 240, the highest court in the land declared (against the contention of a ditch owner) that the acquisition of a prior water right—that is, a

right to appropriate and divert the waters of a stream and carry them over the public land—did not confer the right of way absolutely over the public lands; on the contrary, it was held that such water rights, being acquired by priority of appropriation, must yield to the rights of others in the public lands acquired in like manner by acts of appropriation prior to the inception of the water right. Justice Field announced the opinion of the Supreme Court in Jennison v. Kirk, and reviews and construes the act of Congress of July 26, 1866, c. 262, 14 Stat. 251, as it was originally adopted, and declares that the re-enactment of said act in section 2339 of the Revised Statutes [U. S. Comp. St. 1901, p. 1437] contains no changes of the original act "affecting its substance and meaning." The views of the court thus expressed, he adds, are in harmony with the construction of the same section by the Land Department, and accords with the acts of Congress of July 9, 1870 (chapter 235, 16 Stat. 217), and May 10, 1872 (chapter 152, 17 Stat. 94), amendatory of the act of July 26, 1866 (section 9, c. 262, 14 Stat. 253).

So, also, in the case of Titcomb v. Kirk, 51 Cal. 288, 5 Morr. Min. R. 288, the Supreme Court of California announces its conclusion that "there is nothing in the ninth section of the act of 1866, aforesaid, which requires us to hold that the defendant's right to possess and enjoy his mining claim must be subordinated to the right of plaintiff to construct his ditch." The facts of that case to which the doctrine here announced was applied disclosed a conflict between a ditch owner and a mining claim owner who washed away the ditch of a subsequent appropriator of a ditch water right.

The Supreme Court of Montana in Noteware v. Sterns, 1 Mont. 311, decided that the Congress in enacting section 9 of the act of Congress of July 26, 1866 (chapter 262, 14 Stat. 253), did not enact that one person may go at his pleasure on the mining ground of another without the latter's consent,

and construct through or over the same a ditch or canal which shall greatly damage or almost destroy the vested rights of the owner, without showing a necessity therefor, and paying or securing the damages to result therefrom.

The facts in that case were that ditch owners brought an action against the proprietor of mining land for damages to them resulting from the act of the defendant in filling up a ditch constructed over his (the mining owner's) land. The damages were denied to the plaintiff by the lower court, and so was the injunction to restrain the defendant from interfering with plaintiff's constructing their ditch through or over the defendant's mining ground. The Supreme Court affirmed the lower court's decision. . The import of this decision is that the ditch owners were trespassers in going upon the mining land of the defendant without the defendant's consent.

These decisions are authoritative declarations of the mining law of the United States, as well for the District of Alaska as for the states of California and Montana, in respect to the relative rights of ditch owners and mining claim owners upon the public domain. The rights of ditch owners throughout all the mineral bearing territory of the United States have been declared by Congress to rest on the local laws and customs of miners and judicial decisions.

By the universal law of the Pacific coast states and territories as declared by their courts, the right to use the waters flowing over the public lands of the United States, and to transport them across the public domain to other parts of the public domain, in preference to a like right in others, depends upon priority of appropriation. Priority of appropriation gives priority of right in such cases. The origin of all rights possible to be acquired in the waters must be traced to the first act of appropriation by the water claimant. If these rights spring into existence after rights have become vested in others, the water rights are subordinated to the rights of the others al-

ready vested. Such must be the law of Alaska if the resources of the country are to be developed and the country advanced in prosperity.

In the case under consideration I am of opinion that, in accordance with the laws of Congress and the judicial expositions of the same, and in accordance with the customs of the mining community now extended to include Alaska, the defendants were within their rights in washing away the plaintiff's ditch in the usual, ordinary, and proper course of their mining operations, and the injunction pendente lite to restrain the defendants from interference with its ditch must be denied.