[No. 2949.   June 25, 1928.]

FIRST STATE BANK OF ALAMOGORDO
(BORDER NAT. BANK OF EL PASO, TEX.,
Intervener) v. McNEW et al.

[269 Pac. 56.]

See, also, 252 P. 997.

Tom Lea, of El Paso, Tex., and Holt & Sutherland and J. Benson Newell, all of Las Cruces, for appellants.

J. L. Lawson, of Alamogordo, for appellees.

## OPINION OF THE COURT.

BICKLEY, J. This is an action by plaintiff (appellee) and intervener (appellee) to set aside a conveyance made by appellants W. H. McNew and Nettie McNew, his wife, to their son, Robert J. McNew, and for other incidental relief. The answer contained general and specific denials, and also three separate affirmative defenses, which, if sustained, would defeat the claim of plaintiff and intervener to have the property involved subject to the payment of the community debts of W. H. McNew and his wife. These affirmative defenses will be more fully set forth in the course of the opinion. The following facts were found by the trial court:

"(1) That the defendants are all residents of the county of Otero, state of New Mexico; that Robert J. McNew is a son of defendants W. H. McNew and Nettie McNew, and the said latter parties are husband and wife, and have been for many years.

"(2) That plaintiff, on the 24th day of January, 1923, on a community debt of the defendant W. H. McNew and Nettie McNew, recovered judgment in the district court for the county of Otero against the said W. H. McNew in the sum of $12,000 and

costs; that on the same date a transcript of said judgment was made, filed, and recorded in the office of the county clerk of the said county of Otero; that also on the same day an execution was issued out of the said district court against the said W. H. McNew on the said judgment, which was returned March 21, 1923, to the clerk of this court by the sheriff of the said county of Otero 'nulla bona,' and the said judgment, with interest and cost, is wholly unsatisfied.

"(3) That after the said debt on which the said judgment was recovered became due, demand being made on defendant W. H. McNew for payment, and being unable to pay the same, he and his said wife, on the 26th day of January, 1922, executed and delivered to their said son, Robert J. McNew, a deed for the property in the county of Otero, state of New Mexico, as follows, to wit: Fifteen thousand gallons of water per day from the Sacramento river pipe line, the same to be taken from the pipe at ranch on section 31, in township 21 south of range 9 east, N. M. P. M. That about the same time the defendant W. H. McNew verbally transferred to the said Robert J. McNew the house, tank, and other improvements on the said section 31, with pipe lines used to distribute the said waters over a large area of public range, and also a large amount of improvements on lands of the United States and of the state of New Mexico, consisting of houses, fences, tanks, tubs, and also leases of state lands, from the state of New Mexico, all of the said property being worth about $25,000. That the said property so conveyed and transferred was all of the property that the defendant W. H. McNew owned at the said date, except that mortgaged to the intervener herein. That at the date of the execution of the said deed the defendant W. H. McNew, in addition to his indebtedness to intervener herein, was also indebted to Jacob Snover in the sum of $3,000, with interest, and also other persons, which he was unable to pay, and also was at the said time unable to meet his ranch expenses, all of which was known to the defendant Robert J. McNew at the time of delivery of the said deed and transfer of the said other property.

"(4) That only a nominal consideration was paid by the said Robert J. McNew to the said W. H. McNew for all of the said property, and unless the said property is sold, and the proceeds applied to payment of plaintiffs' said judgment, it must remain unsatisfied; the said defendant W. H. McNew having no property of any kind subject to execution. That the defendant W. H. McNew is now and has been for many years in possession and exercising control over all of the said above described property. That plaintiffs' judgment is a community debt of said W. H. McNew and wife. That the said above-described property, transferred to defendant Robert J. McNew, was at the date of the transfer the community property of said W. H. McNew and wife."

From the foregoing findings, the court concluded, among other things:

"That the said deed from defendants W. H. McNew and Nettie McNew to the defendant Robert J. McNew, and the transfer by

the defendant W. H. McNew to Robert J. McNew of the said other property described above herein, is fraudulent and void as against plaintiff, and should be set aside by this court and held for naught."

■ We think the foregoing findings are supported by substantial evidence, and that the said conclusion was a proper one to be drawn from such findings, subject to the modifications hereinafter set forth. The court went further, and decreed that the houses, tanks, and other improvements belonging to W. H. McNew and Nettie McNew, with the pipe line used to distribute water over the public range, and all other improvements on lands of the United States and on lands of the state of New Mexico, consisting of houses, tanks, and fences on leased lands, be subjected to the judgments and judgment liens of the plaintiff and intervener and other creditors of the said W. H. McNew and Nettie McNew, and that the said property be sold and the proceeds of the sale brought into court, to await disposition thereof to the said creditors, as might be determined by the further orders of the court.

■ Appellants assign 78 errors. About 20 of such assignments relate to the admission or exclusion of evidence. Some of these are not argued. In some instances appellants now admit that the alleged errors were harmless. We have examined them all, and find no prejudicial error therein. We are fortified in this view by the frequent holding of this court to the effect that in trials before the court the erroneous admission of testimony will afford no ground for reversal, unless it appears that the court considered such testimony in deciding the case, particularly where there is other testimony in the case, free from objection, which supports the findings which the court has made. See Lynch v. Grayson, 5 N. M. 487, 25 P. 992; Grissom v. Grissom, 25 N. M. 518, 185 P. 64; Crawford v. Gurley, 23 N. M. 659, 170 P. 736; Halford Ditch Co. v. Independent Ditch Co., 22 N. M. 169, 159 P. 860, L. R. A. 1917D, 1137; Radcliffe v. Chaves, 15 N. M. 258, 110 P. 699, where the court said:

"In cases tried before the court, it will be presumed that the court ultimately disregarded inadmissible testimony, and the erroneous admission of testimony will afford no ground of error,

unless it is apparent that the court considered such testimony in deciding the case."

It is complained that the court erred in overruling appellants' motion, interposed at the close of the case in chief of the plaintiff and intervener, to dismiss the complaint and petition of intervention upon the grounds set forth in said motion, which, in the main, challenged the sufficiency of the evidence to prove the allegations of the complaint and petition in intervention. A refusal to dismiss for want of sufficient proof is not ground for reversal, where the error, if any, is cured by evidence subsequently introduced by either party. 4 C. J. "Appeal and Error," § 3005. And it has been said that, if the evidence when both parties rested justified findings for plaintiff, no reversible error can be asserted upon the court's refusal to dismiss when plaintiff rested. Carpenter v. Gantzer (1925) 164 Minn. 105, 204 N. W. 550.

A similar motion was interposed at the close of the case, after all the testimony was in; but, for the same reason that we think the findings of fact made by the court are sustained by substantial evidence, we think there was no error in overruling this motion, which was in the nature of a demurrer to the evidence.

It is claimed by assignments of error 21 and 22 that the court committed error in sustaining appellees' motion to strike evidence in support of appellants' first separate defense, such first separate defense being that in 1917, when the defendant W. H. McNew was not insolvent, he sold and delivered to his son Eli McNew, for a valuable consideration, to wit, the sum of $8,500, the water mentioned and described in the complaint, and that in 1918 the said Eli McNew entered the military service of the United States government in the recent World War, and that when he was about to depart for France the said Eli McNew, for a valuable consideration, to wit, a promise by defendant Robert J. McNew, to care for, run, handle, manage, and conserve the cattle and live stock of him, the said Eli McNew, during the absence of the latter in the discharge of his aforesaid military service, the said Eli McNew promising and agreeing that if he, the said Eli

McNew, should lose his life while thus engaged, then and in that the event the water referred to and described in the complaint should be and become the property of the defendant Robert J. McNew, and then and there instructed defendant W. H. McNew and Nettie McNew, his wife, in such event, to transfer said water to said defendant Robert J. McNew, and that thereafter, and during the period of the military service of the said Eli McNew, the defendant Robert J. McNew, did perform and fulfill his aforesaid promise to the said Eli McNew; that the said Eli McNew lost his life while engaged in the aforesaid military service, and that thereupon and by virtue of the performance by Robert J. McNew of his aforesaid promise to the said Eli McNew, defendant Robert J. McNew became vested with the right to the title to the aforesaid water; and that pursuant to and in accordance with the aforesaid promise by, and the aforesaid expressed desire and authority of, the said Eli McNew, and in fulfillment thereof, and for the aforesaid consideration, the title to said water was transferred to defendant Robert J. McNew by defendants W. H. McNew and Nettie McNew, his wife, by virtue of the deed referred to and described in the complaint herein.

Defendants offered testimony in support of the parol sale and transfer of possession of the possessory rights of W. H. McNew in the ranch and range, and of the water rights and the instrumentalities for using the same. The plaintiff and intervener objected to such testimony, upon the grounds that such sale and transfer is prohibited by law, unless in writing; the alleged transaction being contrary to the statute of frauds and the laws of the state of New Mexico. Throughout the trial, the court took the position that he would hear all of the testimony and reserve his rulings, and that the objections could be renewed at the end of the trial. At the conclusion of the taking of all the testimony in the case, such objections were renewed. The action of the court upon said motion is so important to our determination of some of the questions involved in the appeal that the exact language of the objection and the final rulings of the court will be set forth in full:

"Mr. Medler: We renew our motion now to those parts of the evidence of the defendant in support of its answer with reference to the verbal agreement purported to have been made, if such was made, between W. H. McNew and Eli McNew, on the ground that the same does not, under the laws of the state of New Mexico, constitute a conveyance of, real estate or of movable real property, nor does it, under the statute of frauds, constitute a conveyance of personal property. We object to that part of the evidence of the defendant with reference to the conversation alleged to have taken place upon the departure of Eli McNew, on the ground that the same does not constitute the creation of an expressed trust in the lands or property of W. H. McNew or Eli McNew in favor of Robert McNew; that it was necessary under the law, to create any such expressed trust, that same should be in writing, and cannot be proved by parol testimony; upon the further objection that, if the water right attempted to be conveyed by the deed to Robert McNew by W. H. McNew and wife on January 24, 1922, and if it is construed to be personal property, then that the said W. H. McNew had no authority in law to make such conveyance, he not being administrator of the estate of Eli McNew; that if it is attempted to assert here that the request made by Eli McNew constituted a soldier's will, or verbal will, then there is no evidence to show that the same was ever probated in the probate court as required by law; third, that the evidence of such requests in this case did not constitute a soldier's will, or verbal will, because the facts and statements did not constitute a present, actual, valid disposition of the property, but was merely a conditional request, and was not made with the formalities of law required in the making of a will.

"The Court: You put that in the form of an objection?

"Mr. Medler: Yes.

"The Court: The testimony has been admitted over objection, subject to the further rulings of the court. I understood at the time that you were going to demur to the evidence.

"Mr. Medler: You can take it as a demurrer on that ground. I understood it was admitted subject to our objection.

"The Court: That is the state of the record; all you have done now is to object and state your grounds more fully.

"Mr. Medler: We move to strike for that reason.

"The court: Well, a motion to strike is not a motion for judgment."

The court's ruling upon the foregoing objections is contained in the final decree, as follows:

"Second. That the motion of the plaintiff and intervener, made at the conclusion of the evidence, to strike out the evidence in support of the first special defense, alleging a contract of sale between defendant W. H. McNew and his deceased son, Eli McNew, for the conveyance of said property, and by way of demur-

rer to said evidence and said defense, as not constituting a defense herein, upon the grounds stated in said motion, be and the same is sustained, in so far as such evidence relates to said alleged contract of sale between defendant W. H. McNew and his said deceased son, Eli McNew, as not constituting a valid contract, to which action of the court the defendants except."

These and other rulings upon various motions were followed in said decree with the following language:

"And this cause coming on further to be heard, after the disposition of said motions, and upon the pleadings herein, the evidence in support thereof, and the law and arguments of counsel, and the merits, the court doth find the issues in favor of the plaintiff and intervener, as set forth in the several findings of fact made in support of such conclusions, as aforesaid, which, together with all other requested findings, with the rulings of the court thereon and with reference thereto, are hereby ordered to be filed as a part of the record herein, and are ordered incorporatd in this decree, and to be taken as a part hereof as fully as if herein again set out at length; and upon such determination of the issues in favor of the plaintiff and intervener, and upon the findings of fact as so made, and made a part of the record herein and hereof."

There seems to be some confusion as to just what the motion of plaintiff was; appellants contending that it amounted to a demurrer to the evidence, in so far as it related to the sale by W. H. McNew to Eli McNew in 1917; the appellees in their brief continuing to designate the motion as a "motion to strike the evidence in support of appellant's first separate defense." In whatever light it is considered, it seems apparent that the court ruled as a matter of law that the evidence given in support of the first alternative defense did not establish a valid contract of sale, and apparently excluded the evidence offered in support of said sale and transfer, and dismissed the first alternative defense.

Having decided that the facts as elicited by the evidence did not constitute a valid contract of sale, the court apparently did not deem it necessary to pass upon the objection to the evidence as to the alleged verbal agreement, which defendants claim established a trust estate in the event of Eli McNew's death for the benefit of his brother, Robert J. McNew. It is the contention of appellees that the right to the flow and use of water is real estate, and that the statute of frauds and the statutes of New Mex-

ico concerning the conveyance of real estate applies to such water rights and transfers thereof must be by deed. Appellants urge that a parol executed contract for a consideration is within the exceptions to the rule contended for by the appellees. In view of the decision we have reached, it seems unnecessary to consider the exact status of the water rights involved with respect to their character as real or personal property.

The defendant W. H. McNew had for many years been engaged in the cattle business. In 1909, he purchased from Oliver M. Lee the right to take and use 15,000 gallons of water daily from a pipe line of the said Lee. It is apparent that McNew's paramount purpose in acquiring this water and water rights was to make use of the same in stockraising. Such is a beneficial use for which water may be appropriated. See Farmers' Dev. Co. v. Rayado L. & I. Co., 28 N. M. 357, 213 P. 202. It was, in fact, so used by McNew, by distributing the water through many miles of pipe over a large range. The land occupied as range was unsurveyed public land. The title of said lands was in the United States. However, W. H. McNew having appropriated and stocked said range with cattle, and being the owner of permanent water for use upon said range for the maintenance of cattle thereon, had possessory rights in the said public lands, which he could protect as against one forcibly entering thereon without right. See New Mexico Stat. Code 1915, § 4628 et seq.; Murrah v. Acrey, 19 N. M. 228, 142 P. 143. Equity would protect him in such possession by enjoining another stockowner not owning or possessing water from willfully turning his cattle upon such range. Hill et al. v. Winkler et al., 21 N. M. 5, 151 P. 1014. Such possessory rights in the public lands are subject to transfer. Yates v. White, 30 N. M. 420, 235 P. 437.

It is plain, therefore, that W. H. McNew was in the enjoyment of a property right in land, as essential to the continued possession of which, and to the beneficial use of which, he required a permanent water supply; that he went to considerable expense in acquiring the water right, and to a greater expense to affix and attach the right to

this particular range, is apparent. While he undoubtedly had the legal right to change the character and place of use of the water, the doing so would involve the loss of a considerable portion of his investment. The water right was, therefore, incident to the range. If title to the land constituting said range had been in W. H. McNew, it cannot be doubted that a conveyance thereof would have carried with it the water right, in the absence of evidence of a contrary intention. It has been held that a squatter on unsurveyed public lands, awaiting survey and the filing of plats, so that he may secure a preference right of entry; may lawfully appropriate water for the irrigation of such lands, and that the right so appropriated is incident and appurtenant to the lands, and that, since the right in the lands is merely possessory, not resting in grant, such right, with the incident or appurtenant water right, may be transferred by parol. See Hindman v. Rizor, 21 Or. 112, 27 P. 13; Low v. Schaffer, 24 Or. 239, 33 P. 678; Nevada Ditch Co. v. Bennett, 30 Or. 59, 45 P. 472, 60 Am. St. Rep. 777; Turner v. Cole, 31 Or. 154, 49 P. 971; Watts v. Spencer, 51 Or. 262, 94 P. 39; McDonald v. Lannen, 19 Mont. 78, 47 P. 648; Wood v. Lowney, 20 Mont. 273, 50 P. 794; St. Onge v. Blakely, 76 Mont. 1, 245 P. 532. These decisions indicate that such parol transfers were accompanied by delivery of possession of the premises, etc. We see no essential difference between the situation described in the cases cited and the case at bar.

Since water for stock-raising, as well as for irrigation, may become incident to the beneficial use of land, the cases cited are not distinguishable in that respect. The water right is considered incident or appurtenant to the land irrigated, because that is the use to which it is applied and for which appropriated. Bank of British North America v. Miller (C. C.) 6 F. 545. For the same reason, it should be deemed incident to the land on which W. H. McNew's cattle grazed.

As we understand the ruling of the trial court, the water right and the use of the property to which it was incident could only be transferred by written conveyance.

In this the court was in error. It has been suggested that this error of the court was waived by appellants by having requested findings of fact covering said first separate defense. It is suggested that the court, having refused these requested findings of appellants, inferentially found to the contrary, and that the court passed upon the facts presented in support of said first defense. In view of the record which we have quoted, we would hesitate to say that the court did actually pass upon the truth of the facts testified in support of said first special defense. If we have been correct in our conclusion that the court had eliminated the first special defense when sustaining the motion of the plaintiff to strike out the evidence in support thereof, then it seems that the court did not consider that there remained in the record any evidence bearing upon the alleged parol contract between W. H. McNew and his son Eli.

So far as the action of the court in refusing appellants' requested findings of fact covering the first defense, it may be accounted for by the fact that the court regarded such requested findings as immaterial, in view of his ruling upon the motion of plaintiffs to strike the evidence in support of said defense. Likewise, in view of the record, the court having ruled on the motion after all of the requested findings of all the parties had been presented, we are unable to say that the appellant, by so requesting findings of fact, waived his objection and exceptions to the action of the court in striking out the evidence in support of said first defense. Appellees also argue that the alleged transfer to Eli McNew was void and of no effect, because it is not shown that the wife of W. H. McNew joined in said transfer. This might present several interesting questions which we find it unnecessary to consider, because we do not find that such objection was sufficiently presented to the trial court.

The second affirmative defense undertook to set forth facts which defendants claimed established a verbal will of Eli McNew, devising the property involved to the defendant Robert J. McNew, in the event the said Eli McNew should die while absent in the war. The court found

in favor of the defendant on the facts set forth in this defense, but refused a requested conclusion of law to the effect that Eli McNew made a verbal will and testamentary disposition of all of his property in favor of and whereby he devised to the defendant Robert J. McNew all of his property, and that said verbal will and testamentary disposition had been proven and was a valid will under the laws of New Mexico, as same existed at the time the said will was made. We find no fault with this action of the trial court. It would seem that the probate court has the exclusive original jurisdiction in the matter of the probate of last wills and testaments. See Code 1915, § 1430; First Nat. Bank v. Dunbar 32 N. M. 419, 258 P. 817.

However, it is contended that the court erred as a matter of law in holding adversely to the appellants' third defense, based upon the homestead entry of the appellant Robert J. McNew, and in holding that the property involved therein was not appurtenant to the land covered by said entry at the time the same was made and possession of the land taken by said appellant Robert J. McNew, and that the court erred in holding that the water rights herein involved were not appurtenant to such land at the time of such entry and the taking of possession, and that the court erred in refusing to find that the possession of the land covered by the said entry, together with improvements thereon, including the aforesaid water right, was in appellant Robert J. McNew from the date of his aforesaid entry, and that by virtue of such entry and the taking of such possession he thereby acquired the aforesaid water right and the improvements upon the land covered by such entry. It seems to be established that on the 3d of February, 1922, the defendant Robert J. McNew filed in the United States land office at Las Cruces, N. M., an application to enter section 31, township 21 S., range 9 E. N. M. P. M., under the Stock-raising Homestead Act of Congress of December 29, 1916.

Having reached the conclusion that the said Robert J. McNew holds no property by virtue of the deed from defendants W. H. McNew and his wife, Nettie McNew, it

remains to be considered what his rights are concerning the improvements upon said section 31, which was entered as aforesaid on the 3d of February, 1922, and his rights concerning the water rights and distributing system involved. The decree, in addition to setting aside the deed of transfer made by W. H. McNew and his wife to Robert J. McNew, also provides that the property involved, to wit:

"Fifteen thousand gallons of water per day from the Sacramento river pipe line, same to be taken from the pipe at the ranch in section 31, township 21 south, range 9 east N. M. P. M., and * * * the houses, tanks, and other improvements belonging to W. H. McNew and Nettie McNew, situate on section 31 above described, with the pipe line used to distribute water over the public range, and all other improvements on lands of the United States, and on lands of the State of New Mexico, consisting of houses, tanks, and fences on leased lands, and leases on lands leased from the state of New Mexico, * * * and all of the right, title, and interest of the defendants W. H. McNew and Nettie McNew, his wife, herein, be and the same is adjudged to be subjected ·to the judgments and judgment liens of the plaintiff and intervener, and such other creditors of the said W. H. McNew and Nettie McNew, as or who may be entitled to establish a lien thereon, or a right to share in the proceeds thereof, as may be determined by the further or future· orders of the court to be made in the premises."

It was further decreed that said property and properties and all of the right, title, and interest of the defendant W. H. McNew and Nettie McNew be sold, etc.

Appellants urge that the water and water right involved has become appurtenant to the land, upon which they claim it has been beneficially used, and that the defendant Robert J. McNew, having initiated his right to the possession and ownership of said section 31, has become the owner of all the appurtenances to said land, including said water right. They rely upon sections 5695 and 5703, New Mexico Statutes Ann., Codification 1915. Section 5695 provides that no assignment of a permit or license to appropriate water shall be binding, except upon the parties thereto, unless filed in the office of the state engineer. Evidence of the right to use water from any works constructed by the United States shall in like manner be filed in such office. It is further provided that the transfer of the title of land in any manner whatsoever

shall carry with it all rights to the use of water appurtenant thereto *for irrigation purposes,* unless previously alienated in the manner provided by law. Section 5703 declares that:

"All water used in this state for *irrigation purposes,* except as otherwise provided in this article, shall be considered appurtenant to the land upon which it is used, and the right to use the same upon said land shall never be severed from the land without the consent of the owner of the land; *but by and with the consent of the owner of the land, all or any part of said right may be severed from said land, and simultaneously transferred, and become appurtenant to other land, or may be transferred for other purposes, without losing priority of right theretofore established,* if such changes can be made without detriment to existing rights, on the approval of an application of the owner to the state engineer. Before the approval of such application, the applicant must give notice thereof by publication, in the form required by the state engineer, once a week for four consecutive weeks in a newspaper of general circulation in the stream system in which the tract or tracts of land may be situated."

In the case at bar some of the water was used for garden and for irrigating grasses and fruit trees. In the main it was, as we have seen, used for watering stock. It is to be noted that the Irrigation Code does not apply "to stockmen, or stock owners who may build or construct water tanks or wells for watering stock." See section 5730, Code 1915. The water right claimed is not the usual right claimed by virtue of appropriation to a beneficial use, upon specified land, for the reclamation thereof by irrigation. Section 5655 of the 1915 Code provides that waters appropriated for irrigation purposes shall be appurtenant to specified lands owned by the person having the right to use the water. This, however, may be modified by contract between the owner of the land and the owner of a ditch, reservoir, or other works for the storage or conveyance of water.

In the case at bar the water right of the defendants W. H. McNew and Nettie McNew was created and existed as a substantive and independent right, in gross, without reference to any extent that it should become appurtenant to any specified lands for the irrigation thereof. The conveyance from Oliver Leè to W. H. McNew and his heirs and assigns was upon the condition "that it shall not be used at any point east of said railroad track as now

constructed, or given to horses or cattle pasturing east of said track," and, further, the grantors agreed "that no other part of the 50,000 gallons reserved * * * shall ever be used to water horses and cattle west of said track, or given to horses or cattle which pasture west of said track." It thus appears that the right to the use of the water was an easement or right in gross, without any fixed or definite place or manner of use, except as therein specified, whatever property it might be used with or upon being the place of use for the time being; and although it has since been taken to section 31, and there a portion of it applied for irrigation, and thereby became appurtenant to such real property to the extent of such irrigation, while the owner of the water right had the possessory right to said property, still it was not an inseparable appurtenance, and might be again separated therefrom and applied elsewhere, or a different use made thereof.

The water right was granted without any restriction as to the nature and place of its use (except as above mentioned, and therefore the water right might be used as and where the circumstances might permit, and the use thereof changed from time to time, at the pleasure of the owner, subject to legal restrictions relative to detriment to others. Such seems to have been the nature of the water right in its inception, so far as we are able to learn from the record, which is meager as to the origin and nature of the water right involved. The water right seems to be similar to that described in Bank of British North America v. Miller (C. C.) 6 F. 545. In the case at bar, a portion of the water involved was used for irrigation for agricultural purposes on said section 31. A large portion of it was used for stock-watering upon a large range of which section 31 was a part. Appellants requested the court to find:

"That on, to wit, January 26, 1922, and for many years prior thereto, the water right mentioned and described in the pleadings herein, and the 15,000 gallons of water per day delivered from the aforesaid Sacramento river pipe line, had been by the said W. H. McNew, and his successor and successors in interest, applied to beneficial use for agricultural and stock-grazing purposes upon the public domain of the United States, to wit, section 31, in township 21 south, range 9 east N. M. P. M., and was being so applied

upon the aforesaid date, when such water right was conveyed to the defendant, Robert J. McNew, as alleged in the pleadings of defendant, and that it has since continuously been and is now being applied to such uses."

And they also requested the court to conclude as a matter of law:

"That on, to wit, February 3, 1922, the lands embraced in section 31, township 21 S., range 9 E., N. M. P. M., were open to entry under the Stock-Grazing Homestead Act of the United States of America [43 USCA §§ 291-301]; that on said date, defendant Robert J. McNew was legally qualified to enter such lands under said Act; that on said date he applied to enter the same, and that such entry was then duly allowed by the proper officers of the United States land office at Las Cruces, N. M., where said entry was made; that at the time such entry was made the improvements referred to and described in the pleadings herein, including the water rights herein referred to and described, existed upon, were appurtenances of, and appurtenant to the lands covered by said entry; that by virtue of such valid entry, the right to the exclusive possession and control of all such improvements passed to and became vested in the said entryman, defendant Robert J. McNew, and have ever since been and now are so vested."

The court refused both said requested finding and conclusion. No request was made for a finding that a portion of the waters involved were applied to a beneficial use on said section 31, or for a conclusion of law that a portion of said water and water rights were appurtenant to said section 31. It was all or nothing. We are not able to tell exactly what the court ruled, but inferentially the ruling was that the water and water rights involved in toto were not appurtenant to said section 31, and maybe that none of it was. The irrigation upon said section 31 was only to a limited extent, about an acre of orchard, some garden, and a small parcel of Johnson grass. The main use of the water was for watering stock. We have seen that water for live stock is a beneficial use to which the water may be applied. But how it may become appurtenant to a specific section of land included in a large range used for cattle raising is not clear. There was no proof in this case that any particular amount of water was used for stock-watering purposes upon any particular portion of the range. The testimony was that the water was supplied to between 1,000 and 1,500 head of cattle, and that it was estimated that each animal would consume about 10 gallons per day. A large range would be re-

quired .for the pasturage of that number of cattle. There were about 30′ miles of pipe line altogether that belonged to the McNew ranges, including 4 miles of what was called the Rutherford pipe line.

While we have said that W. H. McNew could make his water right incident to his possessory right in the public domain, and that a transfer by parol of such possessory right, followed by delivery of 'possession of the lands, would carry with it the water right upon which the enjoyment of such possessory right in said land depended and as an indispensable incident to the proper use thereof, we would be very reluctant to hold that, where a person had exercised his right under the Stock-Raising Homestead Act to purchase from the government 640 acres of grazing land, the owner of the water and water right would lose a portion thereof sufficient to satisfy the requirements of such stock-raising homestead entry, or that, if all of such range should be entered under 'the Stock-Raising Homestead Act, the water owner would lose all of his water and water rights. In the case of a transfer by one having a unity of interest in the water and the land, there are certain reasons of necessity which may be invoked to sustain the inference that it was intended to transfer the water right with the possession of the land, and which are not so cogent when we come to consider the rights of the homestead entryman by virtue of his entry alone.

One of the reasons which impels the courts to favor the presumption that the grantor intended the so-called, appurtenances to go with the land is that the continuance of the previous use is indispensable to the future enjoyment of the estate granted, in the condition it was when transferred, and that, the grantee having paid a valuable consideration for the transfer, such continued use must have been within the contemplation of the parties. In the situation of an entryman under the Stock-Raising Homestead Act, the intentions of the owner of the water or of the entryman have nothing to do with the case. By compliance with certain federal statutes, rules, and regulations, the entryman gets his homestead and whatever prop-

erly goes with it, independent of what the intention or desire of the entryman or the previous possessor of the land may be. Although the entryman may through the course of judicial decision expect to get as appurtenances to the land those ordinary improvements which have become fixtures to the land, it is apparent that he would have no right to expect to get any water or water rights of the former possessor of the land which had been used for irrigation, because the act provides:

"The Secretary of the Interior is hereby authorized, on application or otherwise, to designate as stock-raising lands subject to entry under this act lands the surface of which is, in his opinion, chiefly valuable for grazing and raising forage crops, do not contain merchantable timber, *are not susceptible of irrigation from any known source of water supply*, and are of such character that 640 acres are reasonably required for the support of a family." 43 USCA § 292.

The court having properly refused to make the finding that the entire water right of W. H. McNew of 15,000 gallons of water per day from the Sacramento river pipe line had been used beneficially on section 31, and having properly refused to conclude as a matter of law that the water right in toto was appurtenant to said section 31, and there being no request for findings and conclusions as to the portion thereof used for irrigation, we need not go further.

But, aside from this, and even if it may in a sense have been appurtenant to the land, it was not inseparably appurtenant. See Kinney on Water Rights (2d Ed.) § 1011. In Bank of British North America v. Miller (C. C.) 6 F. 545, it was said (syllabus 1):

"A water right, granted in gross, does not become technically appurtenant to land and a mill upon and for which it is subsequently used by the grantee thereof."

In Trambley v. Luterman, 6 N. M. 15, 27 P. 312, it was decided:

"The adverse, continuous, uninterrupted use, for a period of 21 years, for milling purposes, of the water of an artificial ditch or acequia, supplied from a nonnavigable stream, with the knowledge and acquiescence of the owners of the adjoining land over which the water flowed, is sufficient to establish an easement, in the absence of any evidence of permission or license: and a subsequent

purchaser of and locator on such land takes subject to such easement having only a qualified right to the use of so much of the water as will not deprive the prior proprietor and locator of sufficient to operate his mill."

And in that case the court said:

"When water has been lawfully appropriated the priority thereby required [acquired] is not lost by changing the use to which it was applied."

Appellants invoke the doctrine of Patterson v. Chaney, 24 N. M. 156, 173 P. 859, 6 A. L. R. 90, to the effect that:

"1. The purchaser from the government of public lands is entitled to the improvements on the premises when he acquires possession as being a part of the real estate. * * *

"3. Section 4634, Code 1915, does not attempt to give the owner of improvements upon public lands the right to remove the same, after such lands have passed into the possession of a bona fide entryman or purchaser from the government."

They argue that the water right is an *improvement* on the land, as are the houses, fences, etc. With this we are unable to agree.

To the doctrine announced in Patterson v. Chaney, supra, there seems, however, to be one exception. Sections 2339 and 2340, Rev. Stat. U. S. (Comp. Stat. §§ 4647 and 4648 [30 USCA §§ 51, 52; 43 USCA § 661]), provide as follows:

"Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canals for the purposes herein specified is acknowledged and confirmed; but whenever any person, in the construction of any ditch or canal, injures or damages the possession of any settler on the public domain, the party committing such injury or damage shall be liable to the party injured for such injury or damage."

"All patents granted, or pre-emption or homesteads allowed, shall be subject to any vested and accrued waterrights, or rights to ditches and reservoirs used in connection with such water rights, as may have been acquired under or recognized by the preceding section."

The annotations to section 4647, Comp. Stat., contain the following:

"The object of this section was to give the sanction of the United States to possessory rights which had previously rested solely upon local customs, laws, and decisions of the courts, and to prevent such rights from being lost on sale of the lands [by the United States]. Jennison v. Kirk (1878) 98 U. S. 453, 456, 25 L. Ed. 240; U. S. v. Utah Power & Light Co. (1913) 209 F. 554, 126 C. C. A. 376 (overruling [D. C. 1913] 208 F. 821) ; Cruse v. McCauley (C. C. 1899) 96 F. 369, 374; Miocene Ditch Co. v. Jacobson (1905) 2 Alaska, 567; Broder v. Natoma Water & Mining Co. (1875) 50 Cal. 621; Smith v. Hawkins (1895) 110 Cal. 122, 42 P. 453; Jarvis v. State Bank (1896) 22 Colo. 309, 45 P. 505, 55 Am. St. Rep. 129; Isaacs v. Barber (1894) 10 Wash. 124, 38 P. 871, 30 L. R. A. 665, 45 Am. St. Rep. 772. See, also, Broder v. Natoma Water Co. (1879) 101 U. S. 274, 25 L. Ed. 790."

The court, in Isaacs v. Barber, supra, uses the following language:

"In the case at bar the right to the use of the water had been fully acquired while the land now owned by the defendant was held by the government, and its grant of the same thereafter was subject to such right. It follows that plaintiff is entitled, as against the defendants, to have such right protected by the courts."

It has been held that:

"One who makes a filing upon any unoccupied public land takes the same subject to any vested and accrued water rights for domestic, mining, agricultural, manufacturing, or other purposes which are recognized by the local laws, customs, and decisions of courts." Keiler v. McDonald (1923) 37 Idaho, 573, 218 P. 365.

And it was held in that case that one owning such accrued and vested water right may restrain a subsequent patentee of such land from interference with the use of such water or the easement by which the same is conducted to his premises. In Gila Water Co. v. Green (1925) 27 Ariz. 318, 232 P. 1016, it was decided:

"One complying with local laws for appropriation of water and constructing works for diversion thereof on vacant public lands of United States, acquires 'vested and accrued right,' within Rev. St. U. S. §§ 2339, 2340 (U. S. Comp. St. §§ 4647, 4648), which is superior to rights of subsequent entryman and carries with it right of way or easement for impounding water."

In Warren v. Senecal, 71 Mont. 210, 228 P. 71, the Montana court had before it a case somewhat similar to the case at bar. The statement of facts is somewhat complicated, but the decision of the court, as stated in the syllabus, was:

"Where one who did not own government land appropriated water for irrigation thereof, the water used was not appurtenant to it, and another who got the land from him by contest did not obtain the water right with it."

In the opinion it is said:

"It is probable that Johnson used water either through the Johnson ditch or the Lightall ditch upon the southerly Warren 40 when the land was in his possession. Probably he irrigated to a small extent upon the land included in his own homestead which lies south and west of the Warren southerly 40. Assuming that which the evidence does not show, that after 1879 Johnson made an appropriation of water through the Johnson ditch for irrigating upon the land in the Warren homestead and in his own homestead, still the plaintiffs are not in a position to avail themselves of any such appropriation. *Johnson did not own the land embraced in the Warren homestead. It was government land, and the water he used thereon was not appurtenant to it.* When Warren got the land away from Johnson, he did not obtain the water right with it. Smith v. Denniff, 24 Mont. 20, 60 P. 398 [50 L. R. A. 737] 81 Am. St. Rep. 408; Hayes v. Buzard, 31 Mont. 74, 77 P. 423; Head v. Hale, 38 Mont. 302, 100 P. 222."

A better understanding of the court's decision will be apparent from an examination of these cases.

In Smith v. Denniff, supra, it appears that the appropriator and owner of the water right used the same upon and in connection with lands on which he was living, and of which he was in possession under a contract therefor with the Northern Pacific Railroad Company, the owner thereof. It was claimed that the water belonging to the appropriator was appurtenant to the land belonging to the Northern Pacific Railroad Company, under which company the water appropriator held possession. On the other hand, the opposing party claimed that the water right was not an appurtenance to the land for which it was appropriated. On rehearing, the court goes at length into the nature of water rights and illustrates the principles announced with several cases of common occurrence, one of which follows:

"D has possessory right to government nonriparian land. If D lawfully acquires a water right upon the public domain, and conducts water by a ditch over the public domain to the land which he occupies, and uses the same thereon, it is clear, from the results reached in the foregoing discussion, that such water right and ditch will not become an appurtenance to the land occupied by D until he obtains title thereto from the government, or conveys his water right and ditch to the owner of the land. With

the foregoing established legal principles kept in mind, let us proceed to the consideration of the case at bar. At the very outset of the investigation of the record in this case the language of the court in Wood v. Lowney, 20 Mont. 275, 50 P. 794, is most apt: 'Our labors in the case before us would have been somewhat simplified, and, indeed, would be generally simplified in water right cases, by having incorporated into the record a diagram of the situation of the ditches over which the litigation has arisen.'

"The record does not clearly disclose, but upon the oral argument counsel conceded, that Cosins appropriated the water from the public domain, and that he was then in possession of a certain parcel of nonriparian land under a contract with its owner; what the contract was does not appear; he was however admittedly in rightful possession of the nonriparian land, the title to which was in another. His water right was legally acquired by an appropriation thereof on the public domain; he conducted the water by means of a ditch over the public domain to the land he was occupying, and used the water thereon. It is conceded that he made a valid appropriation of the water, and, as we have endeavored to show, the legal title to the land upon which a water right acquired by appropriation made on the public domain is used or intended to be used in nowise affects the appropriator's title to the water right, for the bona fide intention which is required of an appropriator to apply the water to some useful purpose may comprehend a use upon lands and possessions other than those of the appropriator, or a use for purposes other than those for which the right was originally appropriated. Civ. Code, § 1882; Nevada Ditch Co. v. B'ennett, 30 Or. 59, 45 P. 472, 60 Am. St. Rep. 777. Title to the water right and ditch, therefore, vested in Cosins, and this precludes the possibility of their passing to the Northern Pacific Railway Company, the owner of the land, as appurtenances to the land, without a conveyance in writing. One who asserts that a water right and ditch are appurtenant to certain lands has the burden of proving that they are appurtenances, *and must connect himself with the title of the prior appropriator*. The water right of Cosins was property distinct from his estate in the land of the railway company upon which he was using the water, and his design, successfully executed, was to mortgage the water right, even if he should fail to acquire title to the land included in the mortgage, and upon which the water was then being used.

"In the case at bar the defendant does not assert or pretend that there ever was any conveyance by Cosins of his water right to the Northern Pacific Railway Company, the owner of the land; and since an easement can only become legally attached to land *by unity of title in the same person to both the dominant tenement and the easement claimed*, it is apparent that the Northern Pacific Railway Company could not grant or convey the water right to the defendant as an appurtenance to its land, for the reason that it has never owned the same, and therefore the right and ditch have never been legally attached as appurtenant to the land now occupied by the defendant. Bliss v. Kennedy, 43 Ill. 67; Manning v. Smith, 6 Conn. 289. The water right, not being owned by the railway company, did not constitute a part of its estate. Section 1078, supra, may not be interpreted to mean that

a water right acquired by prior appropriation by one who has only possessory title to the land, although with the intent at the time to use the water upon such land, shall, by the mere act of using it as intended, become inseparably attached as an appurtenance, and the appropriator thereby lose his water right. Such an interpretation would not only violate recognized custom and legal principles, but would render inoperative the provisions of § 1882 of the Civil Code."

Said section is similar to N. M. Code § 5704.

Warren v. Senecal and Smith v. Denniff, supra, were cited with approval by the Montana Supreme Court in St. Onge v. Blakely, 76 Mont. 1, 245 P. 533, to the following statement:

"The right to use water may be owned without regard to the title to the land upon which the water is used; it is a possessory right which may be acquired by appropriation and diversion for a beneficial use; such a right can be acquired by a squatter on public lands, or one holding lands under contract for its purchase (Toohey v. Campbell, 24 Mont. 13, 60 P. 396; Bailey v. Tintinger, 45 Mont. 154, 122 P. 575; Sayre v. Johnson, 33 Mont. 15, 81 P. 389; Wood v. Lowney, above; Thomas v. Ball, above); and, once the right is acquired, its owner cannot be deprived thereof by a conveyance of the land by the landowner (Warren v. Senecal, 71 Mont. 210, 228 P. 71; Smith v. Denniff, above)."

In Hayes v. Buzard, cited in Warren v. Senecal, supra, is the following:

"It therefore does not follow that, because water has been appropriated for a particular use, it forever thereafter must be applied to that use. 'The legal title to the land upon which a water right acquired by appropriation made on the public domain is used or intended to be used in nowise affects the appropriator's title to the water right, for the bona fide intention which is required of an appropriator to apply the water to some useful purpose may comprehend a use upon lands and possessions other than those of the appropriator, or a use for purposes other than those for which the right was originally appropriated. Section 1882, Civ. Code; Nevada Ditch Co. v. Bennett, 30 Or. 59, 45 P. 472, 60 Am. St. Rep. 777.' Smith v. Denniff, 24 Mont. at page 29 and page 401, [60] P. [50 L. R. A. 737], 81 Am. St. Rep. 408. The evidence shows that, during most of the years subsequent to the settlement by Joseph Herron in 1885 until the death of William, the latter rented the land from his brother, and used a portion of the water upon it. What portion was thus used is not made to appear. But this evidence does not furnish any ground for the inference that William Herron intended to make it, or any part of it, appurtenant to the land. If this could be so, then by using a water right upon leased lands the owner would incur the risk of losing it. The right was originally acquired upon the public domain. If the title to the land in no wise affects the title to the water right, the fact that it has been used at this or that

place, or upon particular land, will not of itself determine its character as an appurtenance. 'One who asserts that a water right and ditch are appurtenant to certain lands has the burden of proving that they are appurtenances, and must connect himself with the title of the prior appropriator.' Smith v. Denniff, supra."

We have found no difficulty in reaching the conclusion that, under the federal statutes quoted, the defendant Robert J. McNew took his stock-raising homestead subject to the right of way and other instrumentalities for the maintenance and enjoyment by McNew and his successors and assigns of the water rights they owned. A water right is distinct from the property right in the canals, ditches, pipe lines, and reservoirs by which the water is diverted, stored, and carried to the land for use thereon, and each may exist without the other. See Murphy v. Kerr (D. C. 1923) 296 F. 536, citing Weil on Water Rights, § 280. Considering this principle, we are satisfied that a right to the continued use of a vested and accrued water right shall be maintained and protected as fully as the right to a continued use of the easements of the canal, pipe lines, etc., by which the use of the water and water rights is effectuated. In Lakeshore Duck Club v. Lakeview Duck Club (1917) 50 Utah, 76, 166 P. 309, L. R. A. 1918B, 620, it is said:

"The authorities cited by appellant in support of the right to appropriate water to be used on the public domain are not controverted by us, but they are not in point. It is almost a matter of common knowledge, even among laymen, that water may be appropriated and used on the public domain, and such a right acquired thereby as will be recognized and sustained, even though the appropriator never acquires title to the land. *His right to the water may be respected and upheld even after he is dispossessed of the land upon which the water was used;* but in all such cases it will appear that some sort of possessory right, good as against everybody but the government, existed in favor of the appropriator. Such is the case with the authorities cited by appellant."

See, also, Keiler v. McDonald (1923) 37 Idaho, 573, 218 P. 365, where both the water rights and the easements for enjoying same were protected. In that case a party had appropriated all of the water of a spring; it being wholly upon the premises of the party challenging the right to the continued use of the same, such spring at the time of its appropriation to beneficial uses being on the

public domain, the challenger having obtained a patent thereto from the government. The Supreme Court upheld the judgment:

"That respondents had acquired the right to the use of the water of said spring situated on appellant's premises, with the right to maintain the pipe line extending from said spring to respondent's said premises; that respondents are entitled to the use of said water for domestic and irrigating purposes, and have a right to go upon appellant's premises for the purpose of keeping said spring, the waters thereof, and the pipe line used for conducting the water, in repair."

It would be a barren thing to protect the appropriator in his ditches, canals, and pipe lines from the effect of a subsequent homestead entry, if by such entry the appropriator had lost his right to use the water conducted through said ditches, etc. If a person is protected in the right of a spring or other source of water which he has appropriated upon the public domain from the acts of a subsequent purchaser from the government, there is no apparent reason why he should not be equally protected in respect to waters which the appropriator himself had put upon the public domain.

The doctrine announced in Patterson v. Chaney, supra, has been characterized by the Iowa Supreme Court, reaching the same conclusion, as one which "may and often will operate oppressively." We would see no reason to strive to extend the doctrine to cover vested and approved water rights, which had temporarily been used upon the public domain. There are several reasons why such an application of the principle would be more oppressive than in the case of the ordinary improvements affixed to the land, which are not applied to water rights, etc. The ordinary improvements, such as houses, could be removed quickly and erected elsewhere, or torn down and salvaged. In the case of a water right, a change in the place of use may require considerable time for the acquisition of the possession of other lands, and extensions of instrumentalities may require the acquisitions of rights of way and the expenditure of large sums of money. While the water right might be sold, a market therefor would likely be more limited than one for the ordinary improvements, or

the materials from which the same are constructed. In Patterson v. Chaney, we said that:

"The nature of the property, the manner of its construction, and its intended use all go to show that it was the intention of the party who made the improvements that they should be permanent additions to the land."

And throughout the opinion the element of the "intention to make the article a permanent accession to the freehold" was a controlling factor in reaching the decision. In the case of water rights, it being well known that large expenditures are made to bring water from distant parts to apply upon lands, and with the consciousness of the right to change its use or place of use at any time (if no one is injured thereby), the intention of permanency of application to specific land is lacking; and, while in a case like the one at bar the owner of the water right may intend a temporary application to the public range, which will pass on sale of the possessory right as incident thereto, if such is the apparent intention, it seems unlikely that he would intend a permanent application to such lands in the face of the continuing hazard of being deprived thereof by homestead entrymen.

Another thing is that, in the case of ordinary improvements, the person putting them on the public land does so with the knowledge that, according to the trend of judicial decisions, he is liable to lose them if he does not get them off before the land is purchased from the government, or if he fails to make some arrangement to sell them to such purchaser. On the other hand, he is told by the government that, if he appropriates water rights on the public domain, and these rights have become vested and accrued at the time the land upon which they existed is purchased from the government, such water rights and ditches, etc., will be protected. While the possessor of the public domain is advised that he acts at his peril in the case of ordinary improvements, the assurance given by the government to him in the case of water rights should be given as full effect as reasonably may be to carry out the purpose and intent of such assurance.

The claim that the water right is affixed or annexed to the land upon which it is used could not be stronger

in the case of water rights than in the case of ditches, pipe lines, tanks, etc., for the distribution of water, and yet we have seen that the fact that such instrumentalities being affixed to the land does not keep them from enjoying the protection of the federal statutes heretofore quoted. These artificial water courses, which were thus protected from early times, doubtless were always considered as affixed to the soil; so the federal statute operates to protect them, notwithstanding they are affixed to the soil, contra the argument as to ordinary improvements as laid down in Patterson v. Chaney.

So it appears that while, under Patterson v. Chaney, supra, the entryman, Robert J. McNew, by virtue of his homestead entry and operation of law, got the ordinary improvements, which were fixtures to the land, yet his rights are subject to the burden of the water rights, and subject, also, to the burden of such tanks, pipe lines, and other instrumentalities and easements for the use of such water and water rights as may have been or may be beneficially used in the distribution of such water. With respect to the houses, fences, and other improvements of a permanent character which were not used in the distribution of such water, the case is controlled by Patterson v. Chaney, supra.

From all of the foregoing, it appears that the judgment must be reversed, and the cause remanded, with instructions to award a new trial; and it is so ordered.

PARKER, C. J., and WATSON, J., concur.